

FILED BY _____ D.C.

JAN 12 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CARLOS ALBERTO OCAMPO,**

Plaintiff,

v.

**ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS (APFA),**

Defendant.

Case No.: _____

## COMPLAINT AND JURY DEMAND

(Railway Labor Act – Duty of Fair Representation)

1. Plaintiff Carlos Alberto Ocampo ("Plaintiff" or "Mr. Ocampo"), proceeding pro se, brings this civil action for damages and equitable relief against Defendant Association of Professional Flight Attendants ("APFA" or "Union") for breach of the federal duty of fair representation under the Railway Labor Act ("RLA"), 45 U.S.C. Section 151 et seq.

2. This case arises from APFA's arbitrary, discriminatory, and bad-faith handling of Plaintiff's disputes with his employer, including discipline and discharge proceedings, and APFA's failure to use the grievance and arbitration machinery to protect Plaintiff as required by the RLA and the governing collective bargaining agreement ("CBA" or "JCBA").

3. Plaintiff alleges APFA—through its officers, representatives, and agents—refused to pursue or properly process Plaintiff's contractual protections, failed to file and prosecute Plaintiff's Notices of Dispute ("NODs") against management, disclosed Plaintiff's NODs to the very managers accused of wrongdoing, and then failed to intervene as retaliation escalated and ultimately culminated in Plaintiff's termination.

4. Plaintiff further alleges APFA's conduct was not a mere mistake or difference in strategy, but a pattern of perfunctory representation and intentional avoidance of conflict with management, including explicit statements by APFA representative Heidi Morgan that she would not "burn her bridges" with management by filing reports or arbitrations.

5. Plaintiff seeks compensatory damages, declaratory relief, and appropriate equitable relief available under federal law, including orders compelling APFA to produce the complete union file and to take corrective action consistent with the duty of fair representation.

6. Plaintiff demands a trial by jury on all issues triable as of right.

7. DEFINITIONS. Unless otherwise stated, the following terms are used as defined below:

8. "APFA" means the Association of Professional Flight Attendants, including its officers, employees, representatives, agents, and persons acting on its behalf.

9. "CBA" and "JCBA" mean the collective bargaining agreement governing flight attendants represented by APFA during the relevant time period, including provisions governing discipline, discharge, grievance processing, NOD procedures, and System Board or arbitration procedures.

10. "NOD" means a Notice of Dispute or similar contract-required written objection and initiation of dispute-resolution steps related to management misconduct, discipline, discharge, retaliation, discrimination, and or procedural violations.

11. "System Board" means the contractual grievance and arbitration machinery established under the JCBA and the RLA for resolving disputes between covered employees and the carrier.

12. "MIA" means Miami International Airport.

13. "Management" refers to the carrier's supervisors and agents involved in Plaintiff's proceedings, including but not limited to Alejandro Araya, Giselle Rangel, and Francesca Larouche, as referenced in Plaintiff's notes and materials.

14. JURISDICTION. This Court has subject-matter jurisdiction under 28 U.S.C. Section 1331 because Plaintiff asserts a federal claim for breach of the duty of fair representation arising under the RLA, 45 U.S.C. Section 151 et seq.

15. VENUE. Venue is proper in this District under 28 U.S.C. Section 1391 because a substantial part of the events and omissions giving rise to the claims occurred in this District, including APFA's representative conduct connected to meetings and proceedings at or near MIA and APFA's representational activities in South Florida.

16. PERSONAL JURISDICTION. This Court may exercise personal jurisdiction over APFA because APFA purposefully directs representational activities into this District, represents employees working in this District, and the claims arise from APFA conduct connected to this District.

17. PARTIES. Plaintiff Carlos Alberto Ocampo is a natural person over the age of eighteen and a resident of Broward County, Florida. Plaintiff's mailing address is 1341 NW 4th Ave, Fort Lauderdale, FL 33311.

18. At all relevant times, Plaintiff was a covered flight attendant represented by APFA under the JCBA and was entitled to fair representation in discipline, discharge, grievance, and arbitration matters.

19. Defendant APFA is a labor organization within the meaning of the RLA and is the exclusive collective bargaining representative for the relevant bargaining unit, including Plaintiff during the period at issue.

20. KEY APFA ACTORS. Plaintiff alleges APFA acted through specific individuals who held authority or exercised control over Plaintiff's representation. These allegations are pleaded for notice, and Plaintiff will seek discovery to confirm titles, scopes of authority, and internal communications.

21. Heidi Morgan ("Morgan") acted as an APFA representative with authority in Plaintiff's matters, attended multiple meetings with management, received Plaintiff's NODs, communicated positions to Plaintiff about how APFA would (or would not) pursue disputes, and was present at Plaintiff's termination meeting.

22. Randy Truman ("Truman") acted as an APFA official and or representative involved in Plaintiff's representation and or supervision of representation decisions, including decisions about whether Plaintiff's disputes would be escalated, processed, or pursued through arbitration and internal review.

23. Nicholas Bader ("Bader") acted as an APFA representative involved in grievance processing and later steps, and is referenced in Plaintiff's interactions and meeting materials as the APFA representative through whom arbitration issues were later discussed.

24. Larry Salas ("Salas") acted as an APFA official and or headquarters contact to whom Plaintiff escalated concerns regarding arbitration fairness, representational decisions, and access to the arbitration record and related notes.

25. Beth Williams ("Williams") is referenced in Plaintiff's materials as the arbitrator and or hearing officer used in Plaintiff's arbitration proceedings, and Plaintiff alleges APFA knowingly proceeded with Williams despite Plaintiff's disclosed conflict concern.

26. Plaintiff alleges APFA's actions and omissions by these individuals are attributable to APFA and constitute representational conduct under federal law.

27. LEGAL STANDARD (PLEADED FOR NOTICE). Under the RLA, the exclusive bargaining representative owes members a duty of fair representation in administering and enforcing the CBA, including the grievance and arbitration machinery.

28. APFA breaches the duty of fair representation when its conduct toward a member is arbitrary, discriminatory, or in bad faith. Arbitrary conduct includes perfunctory handling, refusal to investigate, irrational decision-making, or failure to pursue required steps without a rational basis. Bad faith includes hostility, dishonesty, intentional avoidance of advocacy, or deliberate sacrifice of member rights to protect union relationships with management.

29. Plaintiff alleges APFA's conduct meets these standards because APFA refused to file and or properly process disputes, mishandled NODs, disclosed NODs to accused managers, refused arbitration for improper reasons, and failed to intervene at termination.

30. CONDITIONS PRECEDENT, EXHAUSTION, AND FUTILITY. Plaintiff pursued representational channels to the extent reasonably possible, including making repeated written and verbal requests that APFA file NODs, enforce contractual procedures, and pursue arbitration.

31. To the extent APFA contends Plaintiff was required to exhaust internal union remedies, Plaintiff alleges exhaustion was futile and effectively unavailable because APFA did not provide the union file and record, did not provide clear guidance, and made decisions and disclosures that escalated retaliation, making internal relief illusory.

32. Plaintiff further alleges that APFA's stated reason for refusing advocacy—preserving relationships with management—demonstrates a conflict between APFA's institutional interests and Plaintiff's rights, supporting futility.

33. FACTUAL ALLEGATIONS. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

34. Plaintiff alleges that over an extended period he was involved in disputes with management concerning discipline and procedural violations, including disputes that required union intervention and the formal dispute-resolution steps required by the JCBA.

35. Plaintiff alleges he prepared and submitted four (4) written NODs against management and the Company based on misconduct, retaliation, discrimination, and or procedural violations.

Plaintiff alleges he delivered these NODs to Heidi Morgan for filing and processing under the JCBA procedures.

36. Plaintiff alleges that despite receiving the NODs, Morgan did not file them correctly, did not process them through the contract-required channels, and did not take steps to ensure they were preserved as protected union activity and formal dispute notices.

37. Plaintiff alleges that Morgan instead shared Plaintiff's NODs with the very managers about whom Plaintiff complained, including managers and supervisors such as Alejandro Araya, Giselle Rangel, and Francesca Larouche.

38. Plaintiff alleges that after Morgan disclosed Plaintiff's NODs to the accused managers, management's retaliation and discriminatory hostility escalated, including a reckless and punitive posture toward Plaintiff that intensified over time and ultimately culminated in Plaintiff's termination.

39. Plaintiff alleges that disclosing an employee's internal dispute complaints to the accused supervisors, without protection or strategy, foreseeably increases retaliation risk and is inconsistent with fair representation and reasonable advocacy.

40. Plaintiff alleges he repeatedly asked Morgan on many occasions to file arbitration and to take formal action against management for contract violations and retaliation.

41. Plaintiff alleges Morgan responded to Plaintiff, in words substantially similar to the following: "You're not my only flight attendant that I represent in this company and I'm not going to burn my bridges by filing any reports or arbitrations against any personnel of management."

42. Plaintiff alleges Morgan's statement reflects an improper motive: prioritizing APFA's relationship with management over Plaintiff's contractual rights, and refusing advocacy not because of merits but because of fear of conflict with management personnel.

43. Plaintiff alleges that when a union refuses to file or process disputes in order to avoid upsetting management, such refusal is bad faith and constitutes a breach of the duty of fair representation.

44. TERMINATION MEETING FACTS. Plaintiff alleges that on the day of his termination, none of the management team members who had been handling Plaintiff's case were present at the termination meeting.

45. Plaintiff alleges management instead sent a different management representative who had no meaningful knowledge of Plaintiff's case, no familiarity with the disputed facts, and no ability or willingness to answer Plaintiff's questions.

46. Plaintiff alleges that when Plaintiff asked questions about the basis and procedure of termination, the management representative stated that Plaintiff could contact corporate after the meeting to seek answers.

47. Plaintiff alleges Heidi Morgan was present with Plaintiff at this termination meeting and did not intervene, did not demand that knowledgeable management personnel appear, and did not insist on any contract-required process being followed before discharge.

48. Plaintiff alleges no Human Resources ("HR") representative was present at the termination meeting, and no HR participation was offered to Plaintiff despite Plaintiff's requests for clarity and procedure.

49. Plaintiff alleges he asked Morgan whether this was the proper procedure and whether termination meetings are handled this way under the contract.

50. Plaintiff alleges Morgan responded, in substance, that all cases are treated differently, that some require HR and some do not, and that she could not compare Plaintiff's case to how other cases were handled.

51. Plaintiff alleges Plaintiff responded that the parties are governed by a contract and employees must follow the contract, so management should also follow the contract and required procedures.

52. Plaintiff alleges Morgan responded, in words substantially similar to: "Carlos, you're being terminated—that's the point. Anything from here you can bring it up at arbitration with Nick Bader."

53. Plaintiff alleges Morgan's response shows APFA knowingly allowed a procedurally defective termination event to occur and attempted to postpone enforcement of rights to a later stage while failing to preserve the issues and failing to prevent the harm in the first place.

54. SUMMARY OF PLAINTIFF'S FOUR NODS. Plaintiff provides the following summaries of the NODs he submitted, pleaded for notice and subject to amendment to conform to the precise wording of the NOD documents.

55. NOD 1 – Management misconduct and retaliation. Plaintiff's first NOD alleged that named management personnel engaged in retaliatory conduct after Plaintiff asserted rights and raised

complaints, including hostile treatment, shifting accusations, and punitive schedule or status decisions.

56. Plaintiff alleged APFA was required to file and prosecute this NOD to stop the retaliation pattern early and to create a documented contract record.

57. Plaintiff alleges Morgan did not file and prosecute the NOD and instead disclosed it to the accused managers, undermining its protective purpose.

58. NOD 2 – Procedural violations and lack of due process. Plaintiff's second NOD alleged that management violated contractual procedure, including proceeding without full disclosure of allegations and evidence, using intimidation in meetings, and avoiding proper administrative channels.

59. Plaintiff alleged APFA was required to insist on procedure and to grieve procedural defects as separate violations, because process defects often determine outcome in discipline cases.

60. Plaintiff alleges APFA did not do so and instead deferred, postponing enforcement and allowing management to proceed without guardrails.

61. NOD 3 – Mishandling and improper access to sensitive documentation. Plaintiff's third NOD alleged improper handling of documentation and disputes, including control of records, lack of transparency, and use of documentation issues as a pretext for discipline.

62. Plaintiff alleged APFA was required to demand originals, demand chain-of-custody, and prevent the weaponization of administrative ambiguity.

63. Plaintiff alleges APFA failed to demand these basics, failed to stop management from relying on undisclosed materials, and failed to build the evidentiary record necessary for a fair hearing.

64. NOD 4 – Termination procedure defects. Plaintiff's fourth NOD alleged that termination was handled without proper procedure, including lack of meaningful management attendance, lack of HR participation, and denial of basic explanation and opportunity to respond.

65. Plaintiff alleged APFA was required to object contemporaneously, demand compliance, and preserve objections, not merely tell Plaintiff to raise issues later.

66. Plaintiff alleges Morgan's response at termination demonstrates APFA intentionally allowed defective procedure and attempted to shift accountability to a later stage without creating a protective record.

67. DETAILED CHRONOLOGY. The following paragraphs provide additional factual detail and notice of Plaintiff's claim.

68. CHRONOLOGY - October 24, 2022.

69. On or about October 24, 2022, Plaintiff was suspended with pay and removed from the schedule. Plaintiff alleges the suspension was imposed without transparent explanation and without providing a clear, particularized statement of charges supported by evidence.

70. Plaintiff alleges APFA was notified of the suspension and had a duty to ensure contractual protections were observed, including fair notice, appropriate investigation steps, and meaningful representation.

71. Plaintiff alleges early union inaction set the tone for later perfunctory handling and left Plaintiff vulnerable to management escalation.

72. CHRONOLOGY - October 27, 2022.

73. On or about October 27, 2022, Plaintiff attended a meeting with management and APFA where Plaintiff was pressured to resign. Plaintiff alleges the meeting was coercive and that management did not provide a clear, evidence-based charge supporting the demand.

74. Plaintiff alleges APFA representative Heidi Morgan did not meaningfully object, did not demand disclosure of allegations and evidence, and did not ensure that next steps were documented or properly noticed.

75. Plaintiff alleges the pressure-to-resign tactic was designed to bypass contractual protections, and APFA's failure to push back was arbitrary and harmful.

76. CHRONOLOGY - November 4, 2022.

77. On or about November 4, 2022, Plaintiff attended another meeting with management. Plaintiff alleges the meeting continued a pattern of intimidation and ambiguous accusations tied to leave and documentation issues.

78. Plaintiff alleges APFA failed to insist on written allegations, failed to require original documents supporting any claimed misconduct, and failed to create a clear record of what was said and what evidence was actually presented.

79. Plaintiff alleges the absence of a clear union-driven record harmed him later when management relied on vague assertions rather than verifiable evidence.

80. CHRONOLOGY - November 11, 2022.

81. On November 11, 2022, Plaintiff attended a mandatory meeting at MIA focused on management allegations tied to documentation and leave administration.

82. Plaintiff denied wrongdoing and requested that any documentation issues be handled through the carrier's proper administrative channels and that original records be produced.

83. Plaintiff alleges APFA did not demand originals, did not challenge coercive threats, and did not protect Plaintiff from being treated as guilty without reliable evidence.

84. CHRONOLOGY - November 22, 2022.

85. On or about November 22, 2022, Plaintiff attended another meeting that Plaintiff describes as intimidating and hostile. Plaintiff alleges management escalated accusations and interrogated Plaintiff while refusing to provide full documentation for review.

86. Plaintiff alleges APFA allowed the meeting to proceed without meaningful safeguards, did not stop improper questioning, and did not insist that the process be paused pending verification and disclosure of evidence.

87. Plaintiff alleges the hostile meeting environment contributed to emotional distress and created a biased record later used to justify adverse actions.

88. CHRONOLOGY - December 1, 2022.

89. On or about December 1, 2022, Plaintiff began protected leave due to a serious health condition. Plaintiff alleges his leave was properly requested and within applicable protections.

90. Plaintiff alleges management nevertheless treated the leave status as suspicious, continued to pursue accusations, and used administrative confusion as a disciplinary pretext.

91. Plaintiff alleges APFA did not stop management from using the existence of leave and documentation issues as a negative factor and did not secure a clean procedural posture for Plaintiff.

92. CHRONOLOGY - March 26, 2023.

93. On or about March 26, 2023, Plaintiff returned to work and was initially cleared by a supervisor. Plaintiff alleges that soon after, attendance administration resumed targeting Plaintiff for time taken on protected leave.

94. Plaintiff alleges management treated protected leave time as an attendance or disciplinary issue and used administrative ambiguity to keep Plaintiff in a vulnerable status with pay and schedule consequences.

95. Plaintiff alleges APFA did not correct administrative errors, did not demand enforcement of the contract, and did not insist that protected leave not be used against Plaintiff.

96. CHRONOLOGY - April 18, 2023.

97. On or about April 18, 2023, Plaintiff attended a meeting with management concerning continuing accusations tied to documentation and leave status.

98. Plaintiff alleges management treated administrative issues as evidence of misconduct rather than resolving them through proper procedures, and Plaintiff sought basic proof and clarity.

99. Plaintiff alleges APFA did not ensure the discussion was limited to legitimate issues, did not demand evidence, and did not protect Plaintiff from an unfair and shifting process.

100. CHRONOLOGY - May 9, 2023.

101. On or about May 9, 2023, Plaintiff attended meetings at MIA involving management and APFA representatives, including Heidi Morgan and Nicholas Bader. Plaintiff alleges management continued to threaten adverse action while refusing to supply a fair evidentiary record.

102. Plaintiff alleges APFA failed to investigate, failed to insist on originals, failed to push back on shifting requirements, and failed to press for contract compliance.

103. Plaintiff alleges the May 9 meetings were a missed opportunity to correct the record and stop the trajectory toward termination, and APFA's passive posture assisted management.

104. CHRONOLOGY - May 15, 2023.

105. On or about May 15, 2023, Plaintiff attended another meeting at MIA regarding documentation accusations and disputed narratives.

106. Plaintiff alleges APFA did not insist on a neutral administrative resolution and did not insist on full production of evidence being used to accuse Plaintiff.

107. Plaintiff alleges the failure to press for a clean evidentiary record was arbitrary and set up later adverse action.

108. CHRONOLOGY - June 8, 2023.

109. On June 8, 2023, Plaintiff attended a meeting with management, with Heidi Morgan present, to address accusations tied to documentation and leave administration.

110. Plaintiff alleges he requested records, challenged improper possession and handling of documentation, and demanded contract compliance, while management continued to rely on undisclosed materials.

111. Plaintiff alleges APFA did not challenge the unfairness, did not insist on equal access to the materials used against Plaintiff, and did not take decisive protective action.

112. CHRONOLOGY - June 22, 2023.

113. On or about June 22, 2023, Plaintiff reached out to APFA leadership seeking legal representation and coordinated action as the dispute escalated.

114. Plaintiff alleges APFA did not provide timely support or meaningful intervention despite the extended history and the stakes involved.

115. Plaintiff alleges APFA's delay and inaction were arbitrary and deprived him of a chance to prevent termination or secure a fair record.

116. CHRONOLOGY - July 5, 2023.

117. On or about July 5, 2023, Plaintiff requested a meeting with APFA and sought confirmation that his disputes would be pursued and properly documented.

118. Plaintiff alleges APFA did not respond with urgency or a clear plan and did not cure existing procedural defects.

119. Plaintiff alleges these omissions reflect perfunctory representation during a critical window.

120. CHRONOLOGY - July 24, 2023.

121. On July 24, 2023, Plaintiff attended a termination meeting and was informed he was terminated. Plaintiff alleges the termination followed procedural irregularities and was not handled in a contract-compliant manner.

122. Plaintiff alleges Heidi Morgan was present, failed to challenge the procedure, failed to insist on HR involvement or proper management attendance, and failed to preserve fundamental objections in a meaningful way.

123. Plaintiff alleges APFA's failure to intervene at the critical moment was arbitrary and in bad faith because it knowingly allowed contract deviations to proceed.

124. CHRONOLOGY - August 8, 2023.

125. On or about August 8, 2023, Plaintiff met with APFA representative Nicholas Bader regarding allegations and grievance strategy.

126. Plaintiff alleges the meeting did not address core procedural defects and did not correct the consequences of earlier NOD mishandling and management retaliation.

127. Plaintiff alleges APFA did not provide a coherent plan to protect Plaintiff and did not build a complete record supporting contract enforcement.

128. CHRONOLOGY - October 10, 2023.

129. On October 10, 2023, Plaintiff's case proceeded to arbitration in Miami. Plaintiff alleges APFA failed to pursue arbitration in the manner Plaintiff requested earlier and failed to ensure a fundamentally fair hearing process.

130. Plaintiff alleges the arbitrator and or hearing officer used for the proceeding was Beth Williams, and Plaintiff alleges Williams previously served as Plaintiff's supervisor when Plaintiff was based in Boston.

131. Plaintiff alleges Plaintiff advised APFA representative Nicholas Bader of this prior supervisory relationship and stated he did not feel comfortable with Williams serving as the arbitrator and or hearing officer due to conflict and bias concerns.

132. Plaintiff alleges Plaintiff also contacted APFA headquarters and spoke with Larry Salas to object to Williams and request that APFA use a different arbitrator and or hearing officer.

133. Plaintiff alleges APFA's response, communicated by Bader and or Salas, was in substance: "Either take her as the arbitrator or forfeit your chance to get your job back."

134. Plaintiff alleges this ultimatum was coercive, denied meaningful conflict review, and is evidence of arbitrary and bad-faith handling of Plaintiff's case.

135. Plaintiff alleges the hearing involved decisions and omissions by APFA that left Plaintiff without a full record and without strong advocacy against management assertions.

136. Plaintiff alleges APFA's preparation and presentation were perfunctory and did not reflect the seriousness of the stakes for Plaintiff's career.

137. CHRONOLOGY - October 30, 2023.

138. On or about October 30, 2023, Plaintiff was informed that APFA decided not to continue advocacy or escalate his case but did not provide transparent reasons or supporting documentation.

139. Plaintiff alleges the decision lacked a rational basis and was influenced by union convenience and relationship concerns rather than member rights.

140. Plaintiff alleges the decision foreclosed meaningful remedies and supports arbitrary and bad-faith findings.

141. CHRONOLOGY - November 14, 2023.

142. On or about November 14, 2023, Plaintiff was informed that APFA would not proceed further and that paperwork submitted was rejected, with limited explanation.

143. Plaintiff alleges the union's stance was not accompanied by production of the complete file, not accompanied by a transcript, and not accompanied by a good-faith explanation grounded in evidence.

144. Plaintiff alleges the failure to provide the record and reasoned explanation made internal challenge and legal evaluation impracticable.

145. CHRONOLOGY - December 8, 2023.

146. On or about December 8, 2023, Plaintiff submitted appeal paperwork ahead of a stated deadline. Plaintiff alleges this was part of his attempt to exhaust remedies and obtain review.

147. Plaintiff alleges APFA still did not provide clear confirmation of status, did not provide the full record, and did not provide meaningful communication about next steps.

148. Plaintiff alleges these omissions support futility and equitable tolling allegations.

149. CHRONOLOGY - February 16, 2024.

150. By or about February 16, 2024, Plaintiff still had not received substantive communication from APFA regarding internal status or next steps.

151. Plaintiff alleges APFA representatives were unresponsive and did not provide the union file needed for meaningful review.

152. Plaintiff alleges the continuing non-communication supports futility and tolling principles.

153. POST-ARBITRATION COMMUNICATION FAILURES. Plaintiff alleges that after termination and arbitration-related events, APFA continued to fail to communicate and failed to provide basic documents needed for review.

154. Plaintiff alleges APFA did not provide the complete arbitration record, did not provide a transcript, and did not provide a complete list of exhibits or evidence presented.

155. Plaintiff alleges that after the arbitration, he repeatedly requested what Williams's conclusion was and on what basis she reached her final decision.

156. Plaintiff alleges Plaintiff requested notes, logs, and any written record supporting the decision, and he requested these materials from APFA representatives including Bader and Salas.

157. Plaintiff alleges APFA representatives told him that Williams was not going to share her notes with Plaintiff and that APFA would not share those notes with him.

158. Plaintiff alleges APFA representatives told Plaintiff the only way to see those notes and move forward was to respond to a letter Plaintiff received in the mail requesting a Five Thousand Dollar ($5,000) payment to continue the case.

159. Plaintiff alleges APFA representatives stated that if the payment was not made, the case would be closed and would die on the deadline enclosed in the letter.

160. Plaintiff alleges Bader stated that communication would end there and that the only way to move forward or receive further responses was to make the payment.

161. Plaintiff alleges APFA did not provide a written, reasoned explanation for strategic decisions, including why certain objections were not raised contemporaneously and why certain disputes were not advanced when Plaintiff requested arbitration earlier.

162. Plaintiff alleges APFA's non-responsiveness was not a short delay but a sustained pattern that effectively deprived Plaintiff of meaningful internal review.

163. Plaintiff alleges APFA's file control and non-production prevented Plaintiff from verifying what was actually filed, what was actually preserved, and what was actually communicated to management.

164. Plaintiff alleges APFA's non-production also prevented Plaintiff from confirming whether Morgan filed the four NODs properly or whether the NODs were abandoned or handled informally.

165. Plaintiff alleges APFA's file control is material evidence of bad faith because it is consistent with concealment of arbitrary conduct and inconsistent with transparent member advocacy.

166. UNION CONFLICT AND MANAGEMENT-PROTECTION MOTIVE. Plaintiff alleges that Morgan's refusal to "burn bridges" with management reflects a management-protection motive that is incompatible with the duty of fair representation.

167. Plaintiff alleges this motive also implicates APFA leadership and supervision because a labor organization is expected to train and supervise representatives to avoid conflicts and to advocate within lawful bounds.

168. Plaintiff alleges Truman's involvement and supervisory responsibilities, as pleaded, should have prevented and corrected this motive-driven refusal, but did not.

169. Plaintiff alleges APFA's conduct therefore reflects an organizational choice, not merely an isolated incident, and demonstrates a pattern of bad-faith decision-making when management relationships are at issue.

170. PATTERN OF UNION MISCONDUCT. Plaintiff alleges APFA's breach is shown by a pattern of actions and omissions including the following:

171. Plaintiff alleges APFA received multiple NODs from Plaintiff but did not file and process them in the contract-required manner.

172. Plaintiff alleges APFA disclosed Plaintiff's NODs and complaints to the accused managers, increasing retaliation risk.

173. Plaintiff alleges APFA refused to pursue arbitration on multiple occasions for reasons unrelated to the merits, including an expressed desire not to "burn bridges" with management.

174. Plaintiff alleges APFA failed to intervene at the termination meeting despite missing knowledgeable management personnel and missing HR presence.

175. Plaintiff alleges APFA failed to insist on contract-required procedures and instead instructed Plaintiff to raise issues later, without preserving the issues properly.

176. Plaintiff alleges APFA failed to document retaliation escalations after the disclosure of NODs and failed to prosecute retaliation as a contract violation.

177. Plaintiff alleges APFA failed to communicate a coherent strategy, failed to provide the union file, and failed to provide meaningful explanations for representational decisions.

178. Plaintiff alleges APFA failed to create and provide a complete record of arbitration-related proceedings and union decision-making.

179. UNION FILE AND RECORDS. Plaintiff alleges APFA created and or maintained a union file and records concerning Plaintiff's NODs, meetings, communications, and representational decisions.

180. Plaintiff alleges APFA has possession, custody, or control of key records including copies of Plaintiff's NODs, internal APFA communications about Plaintiff's case, communications with management about Plaintiff's disputes, meeting notes, and documentation reflecting why APFA refused to file or pursue arbitration when Plaintiff requested it.

181. Plaintiff alleges APFA should be compelled to produce the complete union file because it is central evidence of whether APFA acted arbitrarily or in bad faith and whether APFA's stated reasons were pretextual.

182. DAMAGES AND HARM. As a direct and proximate result of APFA's breach of the duty of fair representation, Plaintiff suffered loss of employment and related economic harm, including loss of wages, loss of benefits, and loss of the value of seniority-related rights.

183. Plaintiff suffered consequential losses including costs incurred to address the termination and its aftermath, record-gathering and dispute costs, and harm to professional standing caused by the lack of a fair representational process.

184. Plaintiff also suffered emotional distress and related harms to the extent recoverable, including stress caused by intensified retaliation after disclosure of his NODs, the lack of union intervention, and the termination process in which he was left without meaningful answers or procedure.

185. EXPANDED ARBITRATION REQUEST LOG AND UNION RESPONSES. Plaintiff pleads the following to provide greater detail and notice.

186. ARBITRATION REQUEST AND RESPONSE - Late October 2022. Plaintiff asked Morgan to file formal dispute paperwork immediately after the suspension and to demand written notice of allegations and evidence. Plaintiff alleges Morgan did not file such paperwork and did not provide him a written confirmation of any filing.

187. ARBITRATION REQUEST AND RESPONSE - Late October 2022. Plaintiff asked Morgan to object to being pressured to resign and to document that management was attempting to bypass contractual protections. Plaintiff alleges Morgan did not insist on a written record of objections.

188. ARBITRATION REQUEST AND RESPONSE - Early November 2022. Plaintiff asked Morgan to secure meeting notes and to demand originals for any documentation management claimed supported misconduct. Plaintiff alleges APFA did not demand originals and allowed management to control the record.

189. ARBITRATION REQUEST AND RESPONSE - Mid November 2022. Plaintiff asked Morgan to file a retaliation dispute because the tone and treatment escalated after he objected and requested evidence. Plaintiff alleges Morgan did not file a retaliation dispute.

190. ARBITRATION REQUEST AND RESPONSE - Late November 2022. Plaintiff asked for arbitration preparation and for a timeline of grievance steps. Plaintiff alleges APFA did not provide a clear timeline or written plan.

191. ARBITRATION REQUEST AND RESPONSE - December 2022. Plaintiff asked Morgan to protect his leave status and to prevent leave from being treated as a disciplinary factor. Plaintiff alleges APFA did not stop management from using leave and administrative ambiguity against him.

192. ARBITRATION REQUEST AND RESPONSE - January 2023. Plaintiff asked Morgan for written status updates on any disputes filed, including any NOD filings. Plaintiff alleges APFA did not provide written confirmations and did not provide file copies.

193. ARBITRATION REQUEST AND RESPONSE - February 2023. Plaintiff asked Morgan to memorialize any management statements and to preserve evidence of shifting allegations. Plaintiff alleges APFA did not create or provide such memorialization.

194. ARBITRATION REQUEST AND RESPONSE - March 2023. After return to work, Plaintiff asked Morgan to file disputes about attendance targeting tied to protected leave and to demand correction of any records. Plaintiff alleges APFA did not pursue corrective action with urgency.

195. ARBITRATION REQUEST AND RESPONSE - April 2023. Plaintiff asked Morgan to challenge procedural defects in meetings, including lack of evidence disclosure and intimidation. Plaintiff alleges APFA did not file a procedure-based dispute independent of the merits allegations.

196. ARBITRATION REQUEST AND RESPONSE - May 2023. Plaintiff asked Morgan to escalate to arbitration and to stop management from continuing to interrogate him without producing a clean record. Plaintiff alleges Morgan refused and cited not wanting to burn bridges with management.

197. ARBITRATION REQUEST AND RESPONSE - May 2023. Plaintiff asked APFA leadership and or supervisors, including Truman, to intervene because Morgan was refusing escalation for relationship reasons. Plaintiff alleges he did not receive meaningful intervention or a conflict-free representative.

198. ARBITRATION REQUEST AND RESPONSE - June 2023. Plaintiff delivered four NODs and asked for confirmation of filing, deadlines, and next steps. Plaintiff alleges he did not receive confirmations and later learned the NODs were shared with the accused managers.

199. ARBITRATION REQUEST AND RESPONSE - June 2023. Plaintiff asked Morgan and APFA to file a retaliation dispute after management posture worsened. Plaintiff alleges APFA did not do so.

200. ARBITRATION REQUEST AND RESPONSE - July 2023. Before termination, Plaintiff asked Morgan to insist on HR involvement and knowledgeable management attendance for any

termination proceeding. Plaintiff alleges Morgan did not insist and later told him the point was termination.

201. ARBITRATION REQUEST AND RESPONSE - July 24, 2023. At termination, Plaintiff asked Morgan to object and to demand compliance with contract procedure. Plaintiff alleges Morgan did not intervene and told him he could bring it up later with Bader.

202. ARBITRATION REQUEST AND RESPONSE - August 2023. After termination, Plaintiff asked APFA for the union file, NOD filing proofs, and a plan to challenge retaliation and procedure. Plaintiff alleges APFA did not provide the full file or a coherent plan.

203. ARBITRATION REQUEST AND RESPONSE - October 2023. Plaintiff asked APFA for the arbitration record and transcript so he could verify what was said and what evidence was used. Plaintiff alleges APFA did not provide a transcript.

204. ARBITRATION REQUEST AND RESPONSE - November 2023. Plaintiff asked for written reasons for APFA's decisions to stop advocacy and requested internal review materials. Plaintiff alleges APFA did not provide a reasoned written explanation grounded in evidence.

205. ARBITRATION REQUEST AND RESPONSE - December 2023. Plaintiff submitted appeal paperwork and asked for confirmation and full file access. Plaintiff alleges APFA did not provide confirmation and did not provide file access needed for meaningful appeal.

206. ARBITRATION REQUEST AND RESPONSE - 2024. Plaintiff continued requesting communications and documents and continued to experience non-responsiveness. Plaintiff alleges the continuing pattern supports futility and tolling.

207. NOD PROCESS AND FORESEEABLE RETALIATION. Plaintiff alleges that union representatives routinely understand that disclosing an employee's written complaints to the accused managers increases retaliation risk unless protective measures are taken immediately.

208. Plaintiff alleges protective measures include filing a retaliation dispute, documenting the disclosure, routing communications through designated labor relations channels, and making clear to management that retaliation will be formally challenged.

209. Plaintiff alleges APFA did not take these measures and instead maintained a posture of avoiding conflict, consistent with Morgan's statements.

210. Plaintiff alleges this failure is not a technicality; it is a core representational failure because the purpose of union representation in a discipline setting is to reduce and control the risk of arbitrary discipline and retaliatory escalation.

211. TRUMAN'S SUPERVISORY ROLE AND OMISSIONS. Plaintiff alleges Truman had authority and influence within APFA and was responsible for supervising, training, and correcting representational handling when a member alleges bad faith, conflicts, or mishandling.

212. Plaintiff alleges Truman knew or should have known of repeated arbitration requests, repeated NOD submissions, and repeated complaints about Morgan's refusal to act based on management relationships.

213. Plaintiff alleges Truman failed to require a conflict-free handling, failed to ensure NODs were properly filed, failed to ensure a retaliation dispute was pursued after the NOD disclosure, and failed to ensure a complete file was provided to Plaintiff for internal review.

214. Plaintiff alleges discovery will show internal APFA communications demonstrating that the case was handled with a management-protection mindset rather than a member-protection mindset.

215. COUNT I (AGAINST APFA): BREACH OF DUTY OF FAIR REPRESENTATION (RLA). Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

216. APFA owed Plaintiff a duty of fair representation in administering and enforcing the grievance and arbitration machinery under the JCBA and the RLA.

217. APFA breached its duty by acting arbitrarily, discriminatorily, and or in bad faith, including by refusing to file and properly process Plaintiff's NODs; disclosing Plaintiff's NODs to accused managers; refusing to pursue arbitration for improper reasons; failing to intervene at termination; and failing to enforce contract-required procedures.

218. APFA's conduct was arbitrary because it was perfunctory, lacked a rational basis, and ignored foreseeable retaliation risk created by disclosure of Plaintiff's NODs.

219. APFA's conduct was in bad faith because it was motivated, at least in part, by a desire to preserve union relationships with management rather than protect Plaintiff's contractual rights, as reflected in Morgan's statements about not "burning bridges."

220. As a direct and proximate result of APFA's breach, Plaintiff lost meaningful access to fair representation, suffered the adverse employment outcome, and suffered damages.

221. COUNT II (AGAINST APFA): DECLARATORY RELIEF. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

222. An actual controversy exists regarding APFA's representational obligations and whether APFA breached the duty of fair representation owed to Plaintiff.

223. Plaintiff seeks a declaration that APFA breached the duty of fair representation by acting arbitrarily and in bad faith as alleged herein, including refusing arbitration for improper reasons and mishandling Plaintiff's NODs.

224. COUNT III (AGAINST APFA): INJUNCTIVE AND EQUITABLE RELIEF. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

225. Plaintiff seeks equitable relief available under federal law to remediate APFA's breach, including an order requiring APFA to produce the complete union file, communications, and records relating to Plaintiff's NODs and representation decisions.

226. Plaintiff further seeks an order requiring APFA to take corrective action consistent with the duty of fair representation, including processing and or re-processing disputes in a manner that is not arbitrary, discriminatory, or in bad faith, and refraining from retaliatory or management-protective disclosures.

227. PRAYER FOR RELIEF. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant APFA as follows:

228. (a) Declaratory relief as requested herein;

229. (b) Injunctive and equitable relief as requested herein, including production of the complete APFA union file and records;

230. (c) Compensatory damages for economic losses and consequential damages caused by APFA's breach, to the extent recoverable;

231. (d) Pre-judgment and post-judgment interest;

232. (e) Costs of suit; and

233. (f) Any other relief the Court deems just and proper.

234. JURY TRIAL DEMAND. Plaintiff demands a trial by jury on all issues triable as of right.


Respectfully submitted,


/s/ Carlos Alberto Ocampo

Carlos Alberto Ocampo, Plaintiff (Pro Se)

1341 NW 4th Ave

Fort Lauderdale, FL 33311

Phone: (954) 849-1005

Email: COcampo1979@iCloud.com

Date: _____