# EXHIBIT A

## February 15, 2024 email to Nicholas Bader

Contemporaneous memorialization of Bader's instruction concerning the approximately $5,000 deposit and contacting APFA after the funds were gathered.

The following pages are the underlying source document(s) for this exhibit.

# EXHIBIT A

Email to Nicholas Bader dated February 15, 2024 (recap of $5,000 / contract negotiations)

*This page intentionally left blank.*

**From:** KARLOS Ocampo cocampo1979@icloud.com
**Subject:** : recap
**Date:** April 16, 2026 at 2:52 PM
**To:** Nicholas Badder nbader@apfa.org

Begin forwarded message:

**From:** KARLOS ZODCOD <cocampo1979@icloud.com>
**Subject:** **Re: recap**
**Date:** Febuary 15, 2024 at 2:16:08 PM EDT
**To:** Nicholas Bader <nbadder@apfa.org>

On Feb 15, 2024, at 2:16 PM, KARLOS OCAMPO (cocampo1979@icloud.com) wrote : Nicholas Bader <nbadder@apfa.org> :

Hi Nick,

I wanted to let you know that I don't have the money right now to move forward with the $5,000 payment.

As per our earlier conversation, you mentioned that I can take my time because you guys are in the middle of the Contract negotiations . So at the moment, you don't have the time for my case, and I shouldn't worry about it.

You said that once I gather the $5,000, to give you a call, and we can move forward with this case. I'll keep in touch.

Thanks
Carlos Ocampo
594217

# EXHIBIT B

## September 5, 2024 email to Nicholas Bader

Written progress update stating Plaintiff remained committed to proceeding and was close to obtaining the full amount.

The following pages are the underlying source document(s) for this exhibit.

# EXHIBIT B

Email to Nicholas Bader dated September 5, 2024 (follow-up)

*This page intentionally left blank.*

**From:** **KARLOS Ocampo** cocampo1979@icloud.com
**Subject:** : recap
**Date:** April 16, 2026 at 3:00 PM
**To:** Nicholas Badder nbader@apfa.org

> Begin forwarded message:
>
> **From:** KARLOS ZODCOD <cocampo1979@icloud.com>
> **Subject:** **Re: recap**
> **Date:** September 5, 2024 at 4:46:08 PM EDT
> **To:** Nicholas Bader <nbadder@apfa.org>
>
> > On Sep 5, 2024, at 4:46 PM, KARLOS OCAMPO (cocampo1979@icloud.com) wrote : Nicholas Bader <nbadder@apfa.org> :

Dear Nick,

This is Carlos reaching out again. I wanted to provide a brief update on my situation.

I am very close to having the full amount – only a couple thousand dollars remain. As soon as I have the complete funds, I will give you a call so we can move forward.

Please know that I remain committed and am actively working toward this. I will keep you posted on my progress.

Thank you for your patience.

Best regards,
Carlos
594217

# EXHIBIT C

## March 25, 2025 email to Nicholas Bader

Notice that Plaintiff had collected the money and request for escrow instructions and next procedural steps; includes Bader's APFA signature block and email address.

The following pages are the underlying source document(s) for this exhibit.

Could you please send me the information on where to put the funds into escrow? Let me know the next steps so we can go ahead and move forward with the case.

Thank you, and talk soon.

Best,
Carlos

Nicholas Bader
Regional Representative MIA




Association of Professional Flight Attendants
Cell 407-288-6597 I Email nbadder@apfa.org
*The content of this email is intended solely for the recipient(s).*
*It is not to be shared, forwarded or posted without the author's written consent.*

# EXHIBIT D

## May 16, 2025 email to Nicholas Bader

Request for reassignment/contact information after Bader did not provide the requested escrow instructions.

The following pages are the underlying source document(s) for this exhibit.

# EXHIBIT D

Email to Nicholas Bader dated May 16, 2025 (follow-up / reassignment request)

*This page intentionally left blank.*

**From:** **KARLOS Ocampo** cocampo1979@icloud.com
**Subject:** : recap
**Date:** April 16, 2026 at 3:11 PM
**To:** Nicholas Badder nbader@apfa.org

> Begin forwarded message:
>
> **From:** KARLOS ZODCOD <cocampo1979@icloud.com>
> **Subject:** **Re: recap**
> **Date:** May16, 2025 at 9:41:48 AM EDT
> **To:** Nicholas Bader <nbadder@apfa.org>
>
> > On May 16, 2025, at 9:41 AM, KARLOS OCAMPO (cocampo1979@icloud.com) wrote : Nicholas Bader <nbadder@apfa.org> :

Hey Nick, how are you?

I haven't heard from you in a while,I understand that you've been promoted to a different position — President of the Miami base.

If you're no longer handling my case, could you please send me the contact information for whoever has taken over or who I should reach out to? I have no way to get internal information anymore, so my only line of communication has been you.

I'd really appreciate it if you could point me in the right direction. Please do respond back, as the last time I heard from you was over a year ago.

Thanks again for your help.

Best,
Carlos

# EXHIBIT E

## February 28, 2024 Final Decision Letter and § 11.C.4 procedure

Includes the certified-mail requirement, Bader cc, APFA's duty to notify the American Airlines Employee Relations Arbitration Unit, APFA's escrow-account language, the 120-day provision, email transmission record, and USPS tracking showing delivery on March 4, 2024.

The following pages are the underlying source document(s) for this exhibit.

# EXHIBIT E

ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS
APFA
*Representing the Flight Attendants of American Airlines*

February 28, 2024

**CERTIFIED RETURN RECEIPT #9589-0710-5270-0185-1127-86**
**AND CERTIFICATE OF MAILING**

Carlos Ocampo #594217
1341 NW 4th Ave
Fort Lauderdale, FL 33311-6047

coprov21@aol.com

**RE: SS-219-2023-MIA-46 Carlos Ocampo**

Dear Carlos:

This is to advise you that the Grievance Appeal Panel, which includes the five Ad Hoc Members of the Executive Committee has met and determined to uphold the Grievance Review Committee's decision to withdraw your grievance.

**Please advise my office, in writing by certified mail, within thirty (30) days of receipt of this letter if you wish to pursue your own case in accordance with the APFA Policy Manual, Section 11.C.4. which is enclosed.**

Also, enclosed are the procedures to follow in the event you wish to pursue your own case to arbitration.

If we do not hear from you within the time period specified above, your case will be withdrawn.

Very truly yours,

Larry Salas
National Vice-President

Enclosures (2)

cc: Nicholas A. Bader, Regional Representative
APFA SBA

# PROCEDURE TO ARBITRATE GRIEVANCE PER THE APFA POLICY MANUAL, SECTION 11.C.4.

*If the grievant notifies the APFA of his/her desire to proceed to arbitration at his/her own expense the following will apply:*

1. APFA will provide and pay for a Board Member(s).

2. The grievant will be fully responsible for the following costs:

   a. The grievant's individual costs
   b. Witness costs, hotel accommodations, non-employee travel costs
   c. Attorney fees, subpoena fees if necessary

3. The grievant will be responsible for one-half (1/2) of the remainder of the arbitration costs including but not limited to:

   a. Arbitrator Fees
   b. Arbitration hearing room costs
   c. Court reporter costs if transcripts are agreed to
   d. All other "joint" costs which do not solely benefit one party to the arbitration

4. APFA will notify the American Airlines Employee Relations Arbitration Unit office of the decision of the APFA not to sponsor the grievant's case and of the grievant's timely request to proceed to arbitration at their own expense. The American Airlines Employee Relations Arbitration Unit office will, in a confirmatory letter to the grievant, offer arbitrator dates and the names of the arbitrators on the APFA/AAL Arbitration Panel. The grievant shall select an arbitrator from the list of arbitrators by the date indicated in the Company's letter. If the grievant does not respond to the Company with the arbitrator selection by the response date specified in the confirmatory letter, American Airlines will consider the case withdrawn.

5. APFA will maintain an escrow account and the grievant must remit to APFA a certified check in the amount of $5000.00 no later than one-hundred twenty (120) days prior to the scheduled hearing date (this amount represents approximately one-half (1/2) of the arbitrator and hearing room costs based on two (2) days of hearing and one (1) day of decision preparation time by the arbitrator. Any additional costs will be billed and must be paid by the grievant prior to the decision of the arbitrator being released. Any overpayment will be refunded). The grievant will notify APFA at that time if he/she will be represented by an attorney, another representative or will represent him/herself.

6. The grievant **must** respond to the company by the response date specified in the confirmatory letter and **must** remit the $5000.00 certified check to the APFA no later than one-hundred twenty (120) days prior to the scheduled hearing date, otherwise American Airlines will consider the case withdrawn.

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | coprov21@aol.com |
| **Subject:** | Relayed: SS-219-2023-MIA-46 Carlos Ocampo.pdf |
| **Date:** | Wednesday, February 28, 2024 2:41:17 PM |
| **Attachments:** | SS-219-2023-MIA-46 Carlos Ocampo.pdf.msg |

Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:
coprov21@aol.com (coprov21@aol.com) <mailto:coprov21@aol.com>
Subject: SS-219-2023-MIA-46 Carlos Ocampo.pdf

9589 0710 5270 0185 1127 86

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 4.40

Extra Services & Fees (check box, add fee as appropriate)
- [x] Return Receipt (hardcopy) $ 3.65
- [ ] Return Receipt (electronic) $
- [ ] Certified Mail Restricted Delivery $
- [ ] Adult Signature Required $
- [ ] Adult Signature Restricted Delivery $

Postage
.64

Total Postage and Fees
$ 8.69

Postmark Here

EULESS POST OFFICE
FEB 28 2024

SS-219-2023-MIA-46

Sent To
Carlos Ocampo #594217
Street and Apt. No.
1341 NW 4th Ave
City, State, ZIP+4
Fort Lauderdale, Florida 33311-6047

PS Form 3800, ... See Reverse for Instructions

## Certified Mail service provides the following benefits:

- A receipt (this portion of the Certified Mail label).
- A unique identifier for your mailpiece.
- Electronic verification of delivery or attempted delivery.
- A record of delivery (including the recipient's signature) that is retained by the Postal Service™ for a specified period.

### Important Reminders:

- You may purchase Certified Mail service with First-Class Mail®, First-Class Package Service®, or Priority Mail® service.
- Certified Mail service is *not* available for international mail.
- Insurance coverage is *not* available for purchase with Certified Mail service. However, the purchase of Certified Mail service does not change the insurance coverage automatically included with certain Priority Mail items.
- For an additional fee, and with a proper endorsement on the mailpiece, you may request the following services:
  - Return receipt service, which provides a record of delivery (including the recipient's signature). You can request a hardcopy return receipt or an electronic version. For a hardcopy return receipt, complete PS Form 3811, *Domestic Return Receipt;* attach PS Form 3811 to your mailpiece; for an electronic return receipt, see a retail associate for assistance. To receive a duplicate return receipt for no additional fee, present this USPS®-postmarked Certified Mail receipt to the retail associate.
  - Restricted delivery service, which provides delivery to the addressee specified by name, or to the addressee's authorized agent.
  - Adult signature service, which requires the signee to be at least 21 years of age (not available at retail).
  - Adult signature restricted delivery service, which requires the signee to be at least 21 years of age and provides delivery to the addressee specified by name, or to the addressee's authorized agent (not available at retail).
- To ensure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail receipt, please present your Certified Mail item at a Post Office™ for postmarking. If you don't need a postmark on this Certified Mail receipt, detach the barcoded portion of this label, affix it to the mailpiece, apply appropriate postage, and deposit the mailpiece.

**IMPORTANT: Save this receipt for your records.**

PS Form **3800**, January 2023 *(Reverse)* PSN 7530-02-000-9047

# USPS Tracking®

FAQs

Feedback

Tracking Number:

Remove X

## 9589071052700185112786

Copy Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 3:39 pm on March 4, 2024 in FORT LAUDERDALE, FL 33311.

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

### Delivered

**Delivered, Left with Individual**

FORT LAUDERDALE, FL 33311
March 4, 2024, 3:39 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

### Text & Email Updates

### USPS Tracking Plus®

### Product Information

**See Less**

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

# EXHIBIT F

## 2014 JCBA — Section 30 and Section 31 excerpts

Pages 195-211 of the operative-era agreement, including the exclusion of Discharge Grievances from § 30.A, the discharge provisions in § 30.B, and the System Board provisions in § 31, including § 31.K.2.

The following pages are the underlying source document(s) for this exhibit.

## SECTION 30 - DISPUTE RESOLUTION AND GRIEVANCE PROCEDURES

### A. DISPUTE RESOLUTION PROCESS

1. Purpose

   a. Intent

   The Dispute Resolution Process described herein is intended to create fundamental changes in the method and manner of resolving disputes between the parties, and to facilitate non-adversarial resolution of disputes, wherever possible. This process is applicable to all disputes other than Presidential and Discharge Grievances.

   b. Implementation/Training

   To ensure the successful implementation of the Dispute Resolution Process, the Company and the APFA agree that joint Alternative Dispute Resolution/Conflict Resolution training shall be conducted for Company and APFA representatives as soon as practicable after ratification of this Agreement. Each party shall be responsible for any costs associated with travel, incidentals, and/or trip removals of their respective participants for the initial training and any training conducted thereafter. The individual or firm selected will also conduct "Train the Trainer" sessions so that ongoing training for new Company and APFA personnel can be jointly presented by trained Company and APFA representatives.

   c. Railway Labor Act

   Nothing within this Dispute Resolution Process is intended in any way to affect or abridge the rights of any individual under the Railway Labor Act.

2. Types Of Disputes

   a. Individual Dispute

   An individual dispute (Individual Dispute) is defined as a dispute between a Flight Attendant and the Company involving any action of the Company affecting her/him, except discharge.

   b. Group Dispute

   A group dispute (Group Dispute) is defined as a dispute protesting any action of the Company which affects those specifically named Flight Attendants at the same base and in the same manner, e.g., scheduling or pay matter affecting all Flight Attendants on a specific leg on a specific day. Any APFA representative shall be recognized by the Company as the representative of a specific named group of Flight Attendants at her/his base for the purpose of submitting such dispute. The provisions of Paragraph A shall apply to the processing of such Group Disputes.

   c. Base Dispute

   A base dispute (Base Dispute) is defined as a dispute protesting any action of the Company affecting Flight Attendants at the base as a group. The APFA Base President or APFA designee shall be recognized by the Company as the representative of Flight Attendants at that base for the purpose of submitting such dispute. The provisions of Paragraph A shall apply to the processing of such Base Disputes.

3. Notice of Dispute

a. Filing

A Flight Attendant having such a dispute may file an abbreviated, informal document termed a Notice of Dispute (hereinafter referred to as a NOD) in person or through an APFA representative, within ten (10) days, exclusive of Saturdays and Sundays, after becoming aware of such dispute. Such NOD shall be filed with the Manager of Flight Service or her/his designee. Any and all documents supporting the claim that are in the possession of the Flight Attendant or the APFA representative should be attached to the NOD form at the time of filing.

b. Signature/Authorization

Such NOD must be signed by the individual Flight Attendant(s) affected who is filing the dispute. If the NOD is submitted through an APFA representative, a signed authorization must be submitted to the Company, designating the APFA as the representative of the Flight Attendant(s) affected with respect to the dispute. Employees covered by this Agreement may be represented at a Dispute Resolution Conference by such person as they may choose and designate, and the Company may be represented by such person as it may designate.

c. Distribution of NOD

Unless the APFA has filed the NOD on behalf of the Flight Attendant, the Company shall provide a copy of the NOD to the APFA Base President, or APFA designee, within five (5) working days of the Company's receipt of the NOD.

4. Initial Informal Attempt to Reach Resolution

a. Discussion(s)/Initial Exchange of Documents

After a NOD is filed, the Company, the Flight Attendant(s) and her/his APFA representative should endeavor to discuss and resolve the dispute as soon as possible. The parties will commence the exchange of all documents supporting their respective positions at this point.

b. Resolution

Should the parties be successful in reaching a resolution to the dispute, the matter shall be considered resolved and no further action shall be taken by the parties on the matter except any action necessary to implement the terms of the resolution reached between the parties. Such resolution shall be summarized on the NOD form and shall be provided to the Flight Attendant and the APFA representative involved, or, if none, to the APFA Base President, or APFA designee.

c. Discussions/Resolution Off the Record/Non-Precedential

All matters discussed or decided prior to the Dispute Resolution Conference (DRC), including resolutions, shall be off the record and shall have no precedential effect on any other matter or be admissible or relied upon in any other matter. Notwithstanding the foregoing, the parties are not precluded from referring to such a resolution orally and in general terms, and should not refer to specific bases or number of such resolutions reached in other DRCs or initial informal discussions under this procedure.

5. Dispute Resolution Conference

   a. Purpose

      Should the initial attempts to reach resolution be unsuccessful, a meeting hereinafter referred to as a Dispute Resolution Conference (DRC) shall be scheduled. The purpose of the DRC shall be to attempt to reach an acceptable resolution of the dispute informally.

   b. Scheduling Coordination

      The scheduling of a DRC shall be coordinated through the Flight Service Base Manager's office at the Flight Attendant's base station.

   c. DRC Held Within Thirty (30) Days

      The DRC shall be held within thirty (30) days following receipt of the NOD at a time and date mutually agreed upon, unless the parties otherwise agree.

   d. Participants at DRC

      Except as noted below, participants at the DRC shall be limited to the Flight Attendant(s) who filed the NOD, her/his APFA representative, a Company representative and a Facilitator. In all matters involving an individual Flight Attendant's performance or attendance, or a personal matter, the Flight Attendant shall be present at the DRC. In all other disputes, such as scheduling, contractual or other policy issues, the Flight Attendant may elect not to attend the DRC and be represented at the DRC by her/his APFA representative.

   e. Summary of Issues

      Prior to, or at the beginning of the DRC, the Flight Attendant, or her/his APFA representative, shall briefly summarize on the NOD form the matter at issue and the remedy sought. For Group or Base Disputes, as defined in Paragraphs A.2.b and A.2.c, the APFA representative shall provide this summary on the NOD form.

   f. Facilitator

      i. Selection

         The DRC shall be facilitated by the Flight Service Base Manager or her/his designee, i.e., a peer Flight Service Manager. The Company shall select the Facilitator, except that any individual who is or was materially involved in the decision and/or the events leading to the NOD shall not be eligible to serve as the Facilitator at the DRC for that NOD. The Company shall consider the recommendation of the APFA grievance representative in the selection of the Facilitator for a DRC.

      ii. Role

         The role of the Facilitator shall be non-adversarial. The Facilitator shall assist the parties in fashioning an acceptable resolution to the dispute.

      iii. Discussions with Facilitator - Off the Record/Non-Precedential

         The Facilitator shall review all of the documents exchanged and presented by the parties, and provide the parties with an opportunity to openly discuss the dispute. All

matters discussed or decided at the DRC, including recommendations, whether accepted or rejected, and resolutions, shall be off the record and shall have no precedential effect on any other matter or be admissible or relied upon in any other matter. Notwithstanding the foregoing, the parties are not precluded from referring to such a resolution or accepted recommendation orally and in general terms, and should not refer to specific bases or number of such resolutions or accepted recommendations reached in other DRCs or initial informal discussions under this procedure.

g. Document Exchange

At the DRC, the parties shall exchange all documents not previously exchanged supporting their respective positions. This exchange should continue throughout the process as documents become known to any of the parties, until such time as the dispute is finally resolved in accordance with this Agreement. For confidentiality purposes, and, at the option of either party, all names and other identifying information may be expunged from any documents exchanged.

h. Resolution

i. If an agreement resolving the matter in dispute is reached by the parties during the DRC, the Facilitator shall summarize the agreement on the NOD form.

ii. All participants at the DRC shall sign the agreement.

iii. The dispute shall be considered resolved and no further action shall be taken by the parties on the matter except any action necessary to implement the terms of the agreement reached between the parties.

iv. The Company shall provide a copy of the completed NOD form to the Flight Attendant and the APFA representative involved, or, if none, to the APFA Base President or APFA designee.

i. Failure to Resolve/Facilitator's Recommendation

i. If no agreement resolving the matter in dispute is reached by the parties during the DRC, the Facilitator shall issue a written, non-binding recommendation.

ii. The recommendation shall be issued as a separate document apart from the NOD form.

iii. The Facilitator shall issue the recommendation at the conclusion of the DRC, unless otherwise agreed to by the parties, and in no event shall the recommendation be issued later than three (3) working days following the conclusion of the DRC.

iv. A copy of the recommendation, when issued, shall be provided to the Flight Attendant(s), and to both the Company and the APFA locally.

j. Acceptance of Facilitator's Recommendation-Notification/Confirmation

i. The Flight Attendant(s), or the APFA representative, as applicable, shall have five (5) days exclusive of Saturdays and Sundays, from receipt of the Facilitator's recommendation to notify the Flight Service Base Manager, or her/his designee, that the recommendation is accepted.

ii. In the case of an Individual or Group Dispute, the Flight Attendant(s) shall notify the Flight Service Base Manager, or her/his designee, of her/his acceptance by:

(a) signing the recommendation form indicating her/his acceptance and returning the completed form to the Flight Service Base Manger, or her/his designee;

(b) orally notifying the Flight Service Base Manager, or her/his designee, either in person or by telephone; or

(c) authorizing her/his APFA representative to communicate to the Flight Service Base Manager, or her/his designee, her/his acceptance either orally or in writing.

iii. In the case of a Base Dispute, the APFA representative shall notify the Flight Service Base Manager, or her/his designee, by:

(a) signing the recommendation form indicating her/his acceptance and returning the completed form to the Flight Service Base Manager, or her/his designee; or

(b) orally notifying the Flight Service Base Manager, or her/his designee, either in person or by telephone.

iv. In all cases, the acceptance must be communicated within five (5) days, exclusive of Saturdays and Sundays, from receipt of the Facilitator's recommendation. In all cases where the Flight Attendant, or the APFA representative, as applicable, has communicated her/his acceptance orally, such acceptance must be confirmed in writing to the Flight Service Base Manager, or her/his designee.

v. Once acceptance is received, the NOD shall be considered resolved and no further action shall be taken by the parties on the matter except any action necessary to implement the terms of the recommendation.

vi. A copy of the signed recommendation form and acceptance of the recommendation shall be provided by the Flight Service Base Manager or her/his designee, to each of the parties, and to the APFA representative involved; or if none, to the APFA Base President or APFA designee.

k. Rejection of Facilitator's Recommendation - Notification/Confirmation

i. In the case of an Individual or Group Dispute, the Flight Attendant(s) shall notify the Flight Service Base Manager, or her/his designee, of her/his rejection by:

(a) signing the recommendation form indicating her/his rejection and returning the completed form to the Flight Service Base Manager, or her/his designee;

(b) orally notifying the Flight Service Base Manager, or her/his designee, either in person or by telephone; or

(c) authorizing her/his APFA representative to communicate to the Flight Service Base Manager, or her/his designee, her/his rejection either orally or in writing.

ii. In the case of a Base Dispute, the APFA Representative shall notify the Flight Service Base Manager, or her/his designee, of her/his rejection by:

(a) signing the recommendation form indicating her/his designee, of her/his rejection and returning the completed form to the Flight Service Base Manager, or her/his designee; or

(b) orally notifying the Flight Service Base Manager, or her/his designee, either in person or by telephone.

iii. In the event the Flight Attendant or APFA Representative, as applicable, provides no response within ten (10) days, exclusive of Saturdays and Sundays, following receipt of the recommendation, the recommendation shall be deemed rejected and dispute may be submitted to the System Board for adjudication.

iv. In any case where a recommendation has been rejected, the Company shall provide a copy of the signed rejected recommendation to APFA Headquarters within five (5) working days of receipt; or if no written response is forthcoming within ten (10) days, exclusive of Saturdays and Sundays, from issuance of the recommendation, the Company shall notify APFA Headquarters in writing, within five (5) working days, that such recommendation has been deemed rejected.

v. In all cases where a recommendation has been rejected, for record keeping purposes, the Flight Attendant(s) or the APFA Representative, as applicable, shall submit a signed copy of such rejection within thirty (30) days following receipt of the recommendation.

I. Observers at a DRC

i. The parties recognize that the attendance of an observer may affect the conduct and informality of a DRC. Accordingly, as a rule, observers will not attend DRCs, but in the event that an observer is in attendance, the following shall apply:

ii. A single observer for each side can attend a DRC for training purposes only either as a trainee or as a trainer of a participant, as described herein.

iii. An individual who has filed a NOD shall have the right to exclude observers from the DRC.

iv. Unless otherwise mutually agreed, an individual is limited to attending one (1) session of a DRC(s) as an observer trainee and only within that individual's division. It is agreed that a session shall be limited to one (1) day.

v. A DRC shall not be rescheduled to accommodate the attendance of an observer.

vi. If either party elects to have an observer in attendance at a DRC, such party shall notify the other party of the identity of such observer no later than three (3) days, exclusive of Saturdays and Sundays, prior to the DRC. If the scheduling of the DRC precludes such notice, then notice shall be given as soon as practicable.

vii. It is agreed that an observer at a DRC is not a participant. Therefore, such individual may not speak or otherwise participate in the DRC or call for or participate in breaks.

viii. If the observer does not comply with the conditions of this Letter of Agreement, then at the request of any participant, the observer may be excluded.

6. Submission to System Board

Once the recommendation has been rejected, the NOD may be submitted as a grievance to the System Board of Adjustment (SBA), as provided for in System Board of Adjustment, Section 31. The submission of a dispute to the SBA must be made within thirty (30) days of APFA Headquarters receipt of the rejected recommendation. The submission to the SBA

shall include a formal and specific grievance statement, including the matter at issue and the remedy sought, the NOD, and a copy of all documents exchanged to date.

7. Conversion of Individual, Group and Base Disputes to Presidential Grievances

At any time after a NOD is filed in accordance with Paragraph A, and prior to submission to the SBA, APFA may determine that a particular dispute involves a contractual or a policy issue which cannot be resolved at a local level and should be converted to a Presidential Grievance. In such case, a formal and specific statement of grievance shall be filed, and the dispute processed in accordance with the Presidential Grievance procedures detailed herein. The Company may recommend that a NOD is appropriate for conversion to a Presidential Grievance, and the APFA shall consider the Company's recommendation.

B. **DISCHARGE/PRESIDENTIAL GRIEVANCES**

1. Discharge

a. Notification of Discharge/Request for Investigation and Hearing

A Flight Attendant shall not be discharged from the service of the Company without written notification of such action which shall contain the precise charges, or without an investigation and hearing thereon, provided that such Flight Attendant makes written request for such investigation and hearing within ten (10) days, exclusive of Saturdays and Sundays, after receipt of notification. A copy of such discharge will be sent to the APFA Base President and the APFA Regional Representative, simultaneously, with employee notification, unless the employee being discharged requests otherwise.

i. Hearing Officer

Such written request for an investigation and hearing shall be addressed to, and such hearing conducted by, the Managing Director, Flight Service, or her/his designee.

ii. Investigation and Hearing Held Within Ten (10) Days

Such investigation and hearing shall be held within ten (10) days, exclusive of Saturdays and Sundays, of the receipt of the Flight Attendant's written request therefor.

b. Hearing

At the hearing, both parties shall present an explanation of their respective positions by describing the evidence and setting forth their arguments. The Company shall present its explanation first. Should either party desire to call a witness or witnesses to give testimony in support of her/his respective position, such witness shall be subject to questioning by the other party

c. Document Exchange

Documents supporting the respective positions of the parties may be exchanged at the hearing at the option of either party. For confidentiality purposes, and, at the option of either party, all names and other identifying information may be expunged from any documents exchanged. It was agreed, that in a spirit of cooperation and in an effort to promote a mutually respectful and trusting working relationship, the Company and APFA will encourage their representatives to fully exchange all documents used in support of their respective positions at all First Level Discharge Hearings. Should a problem subsequently develop as a result of this exchange of information, the Company and/or

the APFA may elect not to exchange such information at First Level Hearings in the future, at either party's option, consistent with the terms of the Collective Bargaining Agreement.

d. Decision

The official conducting the hearing shall render a decision as soon as possible but no later than ten (10) days, exclusive of Saturdays and Sundays, after the close of such hearing.

e. Appeal

If the decision of the Managing Director, Flight Service, or her/his designee, is not satisfactory to the Flight Attendant, the matter may be appealed to the American Airlines Flight Attendant SBA as provided for in System Board of Adjustment, Section 31, provided said appeal must be submitted within thirty (30) days of receipt of the decision of the Managing Director, Flight Service, or her/his designee.

f. Withhold from Service

A Flight Attendant may be held out of service by the Company pending such investigation, hearing and the appeals therefrom.

g. Exoneration

i. Reinstatement

If, as a result of any hearing or appeal therefrom, as provided herein, a Flight Attendant is exonerated, she/he shall, if she/he has been held out of service, be reinstated without loss of seniority and shall be paid for such time lost in an amount which she/he would have ordinarily earned had she/he been continued in service during such period.

ii. Personnel Record

If, as a result of any hearing, or appeal therefrom, as provided herein, the Flight Attendant shall be exonerated, the personnel record shall be cleared of the charges.

2. Presidential Grievances

a. Filing

The APFA National President may protest, in writing, to the Vice President of Labor Relations, of the Company any action of the Company or any alleged misapplication or misinterpretation of this Agreement within forty-five (45) days after such alleged action, misapplication or misinterpretation has been ascertained.

b. Decision
The Vice President of Labor Relations shall evaluate such grievance and render a decision, in writing, within twenty (20) days after it has been received.

c. Appeal

If the decision of the Vice President of Labor Relations is not satisfactory, an appeal may be made, in writing, within twenty (20) days to the SBA, as provided in System Board of Adjustment, Section 31.

3. General

a. Failure to Appeal Within Time Limits

If any decision made by the Company under the provisions of Section 30 is not appealed by the Flight Attendant(s) affected within the time limits prescribed herein for such appeals, the decision of the Company shall become final and binding.

b. Time Limits

It is agreed by the parties hereto that the periods of time for hearings, decisions, and appeals established in Section 30, shall be considered as maximum periods of time and that when hearings, decisions and appeals can be handled in a period of time less than the maximum time stipulated, every effort will be made to expedite such cases.

c. Stenographic Reports

When it is mutually agreed that a stenographic report is to be taken of the investigation and hearing, in whole or in part, the cost will be borne equally by both parties to the dispute. In the event it is not mutually agreed that a stenographic report of the proceedings shall be taken, any written record available taken of such investigation and hearing shall be furnished to the other party to the dispute upon request, provided that the cost of such written record so requested shall be borne equally by both parties to the dispute.

d. Representation at Hearings

Employees covered by this Agreement may be represented at hearings by such person or persons as they may choose and designate, and the Company may be represented by such person or persons as it may designate. Evidence may be presented either orally or in writing, or both, and through witnesses.

e. Grievance Matters to be in Writing

All matters handled under the procedure provided for in Paragraph B, shall be in writing and shall be signed by the employee or a representative designated by her/him, and all decisions shall be in writing

f. Representatives/Witnesses

When, under the operation of this Agreement, a Flight Attendant is chosen to act as the representative of, or witness for, another Flight Attendant against whom charges have been proffered, such Flight Attendant shall, when the requirements of the service permit, be given leave of absence of a time sufficient to permit her/him to appear as such representative or witness.

g. Submission to the System Board

All submissions to the SBA shall be made in accordance with the provisions of System Board of Adjustment, Section 31.

## SECTION 31 - SYSTEM BOARD OF ADJUSTMENT

### A. STATEMENT OF PURPOSE

In compliance with Section 204, Title II, of the Railway Labor Act, as amended, there is hereby established a System Board of Adjustment for the purpose of adjusting and deciding disputes which may arise under the terms of this Agreement and which are properly submitted to it, which Board shall be known as the American Airlines Flight Attendant System Board of Adjustment, hereinafter referred to as the System Board.

### B. JURISDICTION OF THE SYSTEM BOARD

1. General

   a. Scope

   The System Board as constituted in accordance with the provisions of this Section shall have jurisdiction over disputes between any employee covered by this Agreement and the Company growing out of grievances or out of interpretation or application of any of the terms of this Agreement. The jurisdiction of the System Board shall not extend to proposed changes in hours of employment, rates of compensation, or working conditions covered by existing agreements between the parties hereto.

   b. Definitions. As used in the Section:

      i. Arbitration Hearing is defined as a meeting of the System Board held for the purpose of adjusting and deciding disputes which may arise under the terms of this Agreement.

      ii. Session is defined as a series of arbitration hearings held for the purpose of adjusting and deciding Individual, Group and Base disputes pending before the Quarterly System Board as defined in Paragraph B.2.a.

      iii. Executive Session is defined as any meeting of the System Board wherein the participants are limited to the members of the System Board.

2. System Board Consideration of a Dispute

   a. Individual, Group and Base Disputes

   The System Board shall consider and have jurisdiction over any Individual, Group or Base dispute, as defined in Dispute Resolution and Grievance Procedures, Section 30, properly submitted to it by the APFA National President in accordance with the terms provided for in this Agreement. Regular sessions of the System Board shall be scheduled once each quarter for the purpose of considering all Individual, Group and Base disputes properly submitted to the System Board when such disputes have not been previously settled in accordance with the terms provided for in this Agreement. Such regularly scheduled sessions, hereinafter referred to as the Quarterly System Board, shall take place once each quarter provided that there are such disputes filed with the System Board for consideration. The Quarterly System Board shall continue in session until all such disputes before it have been considered unless otherwise mutually agreed upon.

b. Other Disputes

The System Board shall consider any other dispute properly submitted to it by the APFA National President or by the Company when such dispute has not been previously settled in accordance with the terms provided for in this Agreement.

## C. AUTHORITY OF THE SYSTEM BOARD

1. Decisions

Decisions of the System Board in all disputes properly referable to it shall be final and binding upon the parties thereto.

2. Majority Vote

A majority vote of all members of a System Board shall be competent to make a decision.

3. All Judgments Rendered Without Prejudice

It is understood and agreed that each and every System Board Member shall be free to discharge her/his duty in an independent manner, without fear that her/his relations with the Company or with the employees may be affected in any manner by any action taken by him/her in good faith in her/his capacity as a System Board Member.

## D. ADMINISTRATIVE OFFICERS OF THE SYSTEM BOARD

1. Commissioner and Deputy Commissioner

There is hereby established the position of Commissioner of the System Board and the position of Deputy Commissioner of the System Board. The Commissioner and the Deputy Commissioner are hereby deemed the Administrative Officers of the System Board.

2. Terms of Office

The APFA National Vice President and the Vice President of Labor Relations, or their respective designees, shall act as the Commissioner or the Deputy Commissioner of the System Board. The Commissioner and the Deputy Commissioner once designated shall serve for one (1) year or until a successor has been duly appointed and designated. The office of Commissioner shall be filled and held alternately by the APFA and by the Company. When the APFA is acting as the Commissioner, the Company shall act as the Deputy Commissioner for the System Board, and vice versa.

3. Duties and Authority

a. Administrative Duties

The Commissioner and the Deputy Commissioner shall be charged with coordinating the administrative functions of the System Board, including the appointment of arbitrators and the scheduling of arbitration hearing dates. The Commissioner and Deputy Commissioner shall have the right to delegate some or all of their responsibilities or duties to a designee, provided such delegation is promptly communicated to the other party.

b. Record Keeping

The Commissioner and the Deputy Commissioner shall maintain a complete record of all disputes submitted to the System Board for its consideration and of all findings and decisions made by it.

c. Expenses of the System Board

The Commissioner and the Deputy Commissioner, acting jointly, shall have the authority to incur such expenses, as in their judgment, may be deemed necessary for the proper conduct of the business of the System Board, and such expenses shall be borne one-half (1/2) by each of the parties hereto.

## E. COMPOSITION OF THE SYSTEM BOARD

1. Appointment of Three (3) Member System Board

The System Board, in a given dispute(s) shall consist of three (3) members; one (1) of whom shall be appointed by APFA; one (1) of whom shall be appointed by the Company; and, one (1) of whom shall be an arbitrator appointed in accordance with the provisions of Section 31. Such appointees shall be known as System Board Members.

2. Invocation of Five (5) Member System Board

If either the APFA or the Company desires in a given dispute(s) a System Board comprised of two (2) Company members, two (2) APFA members, and the appointed arbitrator, such party shall invoke such System Board upon ten (10) days' written notification to the opposing party. The invocation of a five (5) member System Board from time to time on a case by case basis shall not constitute cause for dispensing with the provisions of Paragraph E.1 in any other dispute(s).

## F. CHAIRPERSON OF THE SYSTEM BOARD

In a dispute properly submitted to the System Board, it shall be the duty of the Commissioner and the Deputy Commissioner to endeavor to reach agreement on the appointment of an arbitrator to sit as a member of the System Board and to serve as its Chairperson for the purpose of reaching a final decision on the dispute(s) pending before the System Board. The Chairperson shall preside at all arbitration hearings and Executive Sessions of the System Board involving such dispute(s) and shall have a vote in connection with all actions taken by the System Board on that dispute(s).

## G. APFA AND COMPANY SYSTEM BOARD MEMBERS

1. Leaves of Absence and Travel

The APFA and Company System Board Members who are employees of the Company shall be granted necessary leaves of absence for the performance of their duties as System Board Members. So far as space is available, System Board Members shall be furnished free transportation over the lines of the Company for the purpose of attending arbitration hearings and Executive Sessions of the System Board, to the extent permitted by law.

2. Disposition of System Board Member Expenses

Each of the parties hereto will assume the compensation, travel expense and other expenses of the System Board Members appointed by it.

3. Notification

The Commissioner and the Deputy Commissioner shall each notify the other of the individual(s) appointed to serve as System Board Members for a given dispute(s).

H. **TERMS OF OFFICE - SYSTEM BOARD MEMBERS**

1. Quarterly System Board

The Quarterly System Board Members shall serve for one (1) year from the date of their appointment or until their successors have been duly appointed. Quarterly System Board Member vacancies shall be filled in the same manner as provided herein for the appointment of the original Quarterly System Board Members.

2. Discharge and Presidential Grievances

The System Board Members charged with deciding Discharge and Presidential Grievances shall serve on an ad hoc, case by case, basis.

I. **SUBMISSION OF DISPUTES**

1. Content of Submissions

All disputes properly referred to the System Board for consideration shall be addressed to the Commissioner. Five (5) copies of each petition, including all papers and exhibits in connection therewith, shall be forwarded to the Commissioner who shall promptly transmit one (1) copy thereof to the Deputy Commissioner and each member of the System Board. Each submission shall include:

a. Individual, Group and Base Disputes

i. A formal and specific grievance statement, including:

(a) Question or questions at issue;
(b) Statement of facts;
(c) Remedy sought.

ii. Copies of all documents exchanged between the parties to date.

iii. Notice of Dispute.

b. Discharge and Presidential Grievances

i. Question or questions at issue.
ii. Statement of facts.
iii. Position of employee, employees or the APFA.
iv. Position of the Company.
v. Copies of all documents exchanged between the parties to date.

2. Joint and Separate Submissions

When possible, joint submissions should be made, but if the parties are unable to agree upon a joint submission, then either party may submit the dispute and its position to the System Board, provided however, that such separate submissions must be made within thirty (30) days from the date of the Commissioner's receipt of the original submission. No dispute shall be considered by the System Board which has not first been handled in accordance with the

provisions of this Agreement, including, as applicable, the rendering of a decision or the issuing of a recommendation by the Company.

3. Company Petition

Notwithstanding the foregoing Paragraph I, in no way shall the Company's right to file a petition to the System Board be affected.

J. **PANEL OF ARBITRATORS**

1. Panel

The Commissioner and the Deputy Commissioner shall endeavor to maintain at all times a panel of eleven (11) arbitrators that are mutually acceptable to act as the Chairperson of the System Board and from whom dates of availability are routinely obtained. Appointment of an arbitrator as a System Board Member will be based upon mutual agreement, rotation and availability.

2. Vacancy/Termination

If a vacancy occurs on this panel, the Commissioner and Deputy Commissioner will endeavor to agree upon an arbitrator to fill such vacancy within thirty (30) days. Each arbitrator shall serve as a member of this panel for an indefinite term; either the Commissioner or Deputy Commissioner may cause the services of an arbitrator to be terminated (except as to disputes already submitted to him/her) by giving written notice to the other party and to the arbitrator.

3. Appointment of Ad Hoc Arbitrator

In the appointment of an arbitrator, the Commissioner and Deputy Commissioner should attempt to reach agreement from among members of this panel; however, nothing in this Section shall prohibit the Commissioner and Deputy Commissioner from agreeing to utilize an ad hoc arbitrator for a particular dispute(s).

K. **APPOINTMENT OF ARBITRATOR, LOCATION AND NOTICE OF HEARINGS**

1. Quarterly System Boards (QSB)

a. Chairperson/Standing Arbitrator

i. Appointment of Standing Arbitrator

The appointment of a standing arbitrator to chair the Quarterly System Boards for the succeeding calendar year must be made no later than forty-five (45) days prior to the end of the present calendar year.

ii. Termination

Either the Commissioner or the Deputy Commissioner may terminate the services of a standing arbitrator after the first Quarterly System Board or any Quarterly Session thereafter so long as such termination is made no later than sixty (60) days prior to the next scheduled session of the Quarterly System Board. In such event, the Commissioner and the Deputy Commissioner will promptly agree upon the appointment of another arbitrator, either from the panel of arbitrators or an ad hoc arbitrator, to Chair the Quarterly System Boards. Should the parties fail to reach agreement within fifteen (15) days, the provisions prescribed herein will be utilized to

retain the services of an arbitrator for the remainder of the calendar year. The newly appointed standing arbitrator will chair the next session of the Quarterly System Board, or if unavailable, the succeeding Quarterly System Board. If such arbitrator is unavailable for part or all of that initial session of the Quarterly System Board, during such period of unavailability, the parties will mutually agree upon an arbitrator to temporarily chair that part of the Quarterly System Board for which the newly appointed arbitrator is unavailable.

b. Location of Arbitration Hearings

The Quarterly System Board shall meet in the city where the General Offices of American Airlines, Inc. are maintained, unless a different location is agreed upon by the Commissioner and the Deputy Commissioner.

c. Notice of Arbitration Hearings/Docket

Upon receipt of notice of the submission of a dispute, the Commissioner shall set a date for the arbitration hearing, which shall be at the time of the next regular session of the Quarterly System Board and such dispute shall be considered docketed for hearing. If the APFA National President or the Vice President of Labor Relations consider the dispute of sufficient urgency and importance, and the dispute has been docketed but not heard due to time constraints during at least one (1) prior session of the Quarterly System Board, either party may request an arbitration hearing at an earlier date. Such earlier date shall be at such a time and place agreed upon by the Commissioner and Deputy Commissioner, but not more than fifteen (15) days after such request for an arbitration hearing is made. The Commissioner shall give the necessary notices, in writing, of such arbitration hearing to the System Board Members and to the parties to the dispute.

d. Pre-Arbitration Conference

Prior to each session of the Quarterly System Board, representatives from Headquarters Flight Service, Labor Relations and the APFA will confer by phone, or in person if mutually agreed upon, to review all grievances submitted to date. All parties will use their best efforts to facilitate and expedite the processing of disputes before the System Board.

e. QSB Protocol

In order to hear and resolve disputes in an expeditious manner, the parties have agreed that the following procedures will apply:

i. Arbitration hearings will begin each day at 0900 and continue until all disputes on the day's docket have been heard, unless otherwise agreed to by the presenters;

ii. The disputes will be heard in the order in which they appear on the day's docket, with the oldest dispute scheduled first;

iii. To expedite the hearing of each dispute by resolving preliminary procedural matters prior to hearing, the presenters on each side will meet prior to the arbitration hearing date to review and discuss all disputes to be heard, including all documents to be introduced in the hearing, preliminary motions, etc. Presenters should openly discuss their proposed dispute presentations in order to foster a full understanding of the relative merits of each side's dispute. It is anticipated that this full and frank exchange will expedite the hearing of these disputes and, wherever possible, stimulate dispute resolutions prior to hearing.

The presenters will stipulate in writing to all facts and issues not in dispute, including relevant Company policies, background information on the grievant and all other witnesses, and any other uncontested information that is relevant to the dispute. In the event the parties have filed separate submissions, the presenters should attempt to agree to a joint statement of the issue. These stipulations are to be submitted to the Quarterly System Board at the beginning of the hearing in each dispute. Should written stipulations on a specific dispute not be accomplished by the presenters prior to hearing, the Quarterly System Board will proceed with the next dispute(s) in order on the docket pending the presenters' completion of the necessary stipulations;

iv. Each presenter will use her/his best efforts to list her/his opening statement to five (5) minutes, but in no event shall the opening statement exceed ten (10) minutes. The closing summation shall not exceed fifteen (15) minutes;

v. The Company and APFA agree that no taped or stenographic transcripts will be taken during the first two (2) sessions of the Quarterly System Board convened pursuant to this Agreement. Thereafter, as a rule, taped or stenographic transcripts will not be taken;

vi. The presenters will use oral closing summations rather than written briefs, unless the Commissioner and Deputy Commissioner mutually agree that written briefs should be used in a specific case;

vii. Decisions in each case will be issued on the day of the hearing, unless the Quarterly System Board agrees otherwise. The Quarterly System Board will use best efforts to limit Executive Sessions to thirty (30) minutes for each case.

All majority decisions of the Quarterly System Board will be final and binding and made with precedent, unless otherwise noted by the Quarterly System Board in its written decision.

f. Conversion to Presidential Grievance

i. If, at any time prior to submission to the System Board, the APFA elects to convert a particular Individual, Group or Base Dispute to a Presidential Grievance, the procedures in Section 30 governing Presidential Grievances shall apply.

ii. If, after submission to the System Board, the APFA elects to convert a particular Individual, Group or Base grievance to a Presidential Grievance, the grievance shall, within forty-five (45) days of notice of conversion to the Company, be scheduled for a Pre-Arbitration conference. Should the Company desire to file a separate submission to the System Board, such submission shall be filed within thirty (30) days following the date of the Pre-Arbitration Conference.

2. Discharge Grievances

a. Appointment of Arbitrator/Hearing Date

The Commissioner and the Deputy Commissioner shall, within forty-five (45) days from the date of APFA's submission, agree on the appointment of an arbitrator to chair the System Board and schedule the arbitration hearing date of a Discharge grievance. The scheduled hearing date may be outside this forty-five (45) day time limit.

b. Exception: Underlying Dispute

For a discharge grievance arising from an underlying policy or contractual dispute which is currently pending between the Company and the APFA, the arbitration hearing on the discharge may be held in abeyance until the policy or contractual dispute between the Company and the APFA has been resolved in accordance with this Agreement.

c. Location of Arbitration Hearing

In discharge disputes, the System Board shall meet in the city where the discharged employee was based, unless otherwise agreed to by the Commissioner and the Deputy Commissioner.

d. Notice of Arbitration Hearing/Docket

Discharge grievances shall be scheduled for arbitration hearing at such place and time agreed upon by the Commissioner and the Deputy Commissioner. The Commissioner shall distribute the necessary dockets, in writing, with the time and place of such arbitration hearing, to the System Board Members and to the parties to the dispute.

3. Presidential Grievances

a. Headquarters Pre-Arbitration Conference

Within forty-five (45) days of the APFA's submission of a Presidential Grievance to the System Board, a Headquarters Pre-Arbitration Conference shall be held with the APFA National President or her/his designee(s) and the Vice President of Labor Relations, or her/his designee(s). At such conference, the parties shall exchange all documents known to the parties at the time which are used in support of their respective positions. For confidentiality purposes, and, at the option of either party, all names and other identifying information may be expunged from any such documents exchanged.

b. Appointment of Arbitrator/Hearing Date

The Commissioner and the Deputy Commissioner shall, within forty-five (45) days from the date of the APFA's request for arbitration, agree on the appointment of an arbitrator to chair the System Board and schedule the arbitration hearing date of the Presidential Grievance. The scheduled hearing date may be outside this forty-five (45) day time limit.

c. Location of Arbitration Hearing

The System Board shall meet in the city where the General Offices of American Airlines, Inc. are maintained, unless a different location is agreed upon by the Commissioner and the Deputy.

d. Notice of Arbitration Hearing/Docket

Presidential Grievances shall be scheduled for an arbitration hearing at such place and time agreed upon by the Commissioner and the Deputy Commissioner. The Commissioner shall distribute the necessary dockets, in writing, with the time and place of such hearing, to the System Board Members and to the parties to the dispute.

# EXHIBIT G

## APFA August 20, 2025 response

APFA's written response to Plaintiff's July 17, 2025 pre-litigation demand, signed by APFA General Counsel Charlette Broderick.

The following pages are the underlying source document(s) for this exhibit.

Association of Professional Flight Attendants

APFA HEADQUARTERS
1004 West Euless Boulevard
Euless, Texas 76040

*Proudly Representing the Flight Attendants of American Airlines*

August 20, 2025

**VIA ELECTRONIC MAIL: (COcampo1979@iCloud.com)**
Carlos Ocampo
1341 NW 4th Ave.
Fort Lauderdale, FL 33311

**RE: Carlos Ocampo Pre-Litigation Demand**

Dear Mr. Ocampo,

I am writing in response to your pre-litigation demand received by the Association of Professional Flight Attendants ("APFA" or "the Union") on July 17, 2025.

In your July 17 demand, you allege that APFA, through its representatives, breached its duty of fair representation, engaged in fraudulent conduct during your arbitration, and participated in American Airlines' ("AA" or "the Company") alleged retaliatory conduct connected to your termination on July 24, 2023. You further request immediate payment in the amount of $500,000.00 or a written settlement proposal that includes monetary compensation, an apology and changes to APFA's grievance procedures.

According to APFA's records, the Company issued a termination letter to you on July 21, 2023. The letter cited allegations that you falsified Family Medical Leave documentation submitted for the period of July 5 through July 28, 2022, and made misrepresentations related to that documentation. It also indicated that you were found to be in violation of the Company's Flight Attendant Attendance Policy.

On July 25, 2023, you executed a form authorizing APFA to represent you in your termination proceedings. The following day, APFA filed a grievance on your behalf. On July 28, 2023, Nicholas Bader, serving as an APFA Regional Representative, provided you with a copy of the APFA Dismissal Packet, which outlined the next steps and requested documents and information from you.

A First Level Hearing was held on September 6, 2023, pursuant to Sections 30.B.1.b of the applicable Collective Bargaining Agreement between AA and APFA ("CBA"). Beth Williams presided over the First Level Hearing as the Hearing Officer pursuant to Section 30.B.1.a.i of the CBA. On September 19, 2023, Ms. Williams notified you in writing that your grievance had been denied. In accordance with Section 30.B.1.e. of the CBA, APFA National Vice President Larry Salas submitted the termination grievance to the System Board of Adjustment.

Section 11.B.h. of the APFA Policy Manual provides that "the final decision as to whether the APFA will pursue the grievance or withdraw it shall rest solely with the APFA Grievance Review Committee, unless appealed to the Grievance Appeal Panel." On November 1, 2023, Mr. Salas informed you in writing that the Grievance Review Committee had determined your grievance should be withdrawn and not taken forward to arbitration based on the facts of your case and relevant arbitration precedents. That letter also advised you of your right to appeal the decision and to independently pursue arbitration if you chose.

On November 13, 2023, you submitted an appeal to the Grievance Appeal Panel. On February 28, 2024, you were notified that the Panel upheld the Committee's decision to withdraw your grievance. The letter reiterated that you could pursue arbitration independently by contacting Mr. Salas's office within 30 days. APFA records do not reflect further correspondence from you following that notice.

As you are aware, under the Railway Labor Act (RLA), 45 U.S.C. § 152, a union has a duty to represent its members fairly. This duty is breached only where the union's conduct is arbitrary, discriminatory, or in bad faith. Courts have consistently held that unions have wide discretion in how they handle grievances and are not liable for mere errors in judgment. See *Hudson v. Air Line Pilots Ass'n Intern.*, 415 B.R. 653, 660 (N.D. Ill. 2009). Conduct may be deemed in bad faith only where there is substantial evidence of fraud or deceit. *Payne v. Giant Food, Inc.*, 346 F. Supp. 2d 15 (D.D.C. 2004). Additionally, legal claims alleging breach of the duty of fair representation under the RLA are subject to a six-month statute of limitations.

Based on our review of the documentation and applicable legal standards, we are unable to substantiate the allegations in your demand or conclude that APFA has legal liability for any harm you assert as a result of your termination. Nonetheless, we acknowledge receipt of your notice of potential litigation and confirm that APFA will comply with all applicable obligations under Texas and federal law.

Please direct any further correspondence related to this matter to my attention at cbroderick@apfa.org.

Sincerely,

Charlette Broderick/s/
Charlette Broderick, Esq.
APFA General Counsel

cc: Larry Salas, APFA National Vice President

# EXHIBIT H

## September 22, 2025 email from APFA counsel

Counsel's one-page confirmation that APFA's August 20, 2025 correspondence constituted its full and complete response.

The following pages are the underlying source document(s) for this exhibit.

## On Sep 22, 2025, at 1:13 PM, Charlette Broderick <CBroderick@apfa.org> wrote:

Dear Mr. Ocampo,

Please be advised that APFA's correspondence dated August 20, 2025, constitutes our full and complete response to your demand letter dated July 17, 2025.

Regards,

Association of Professional Flight Attendants
APFA.ORG
Representing over 28,000 American Airlines Flight Attendants

**Charlette Broderick**
General Counsel
1004 W. Euless Blvd.
Euless, Texas 76040
Office: 682.301.8454
cbroderick@apfa.org

The content of this email is intended solely for the recipient(s).
It is not to be shared, forwarded or posted without the author's written consent.

**From:** KARLOS Ocampo <cocampo1979@icloud.com>
**Sent:** Monday, September 22, 2025 11:58 AM
**To:** Charlette Broderick <CBroderick@apfa.org>
**Cc:** Larry Salas <lsalas@apfa.org>
**Subject:** Re: APFA's response to Carlos Ocampo Pre-Litigation Demand

# EXHIBIT I

## Larry Salas Declaration excerpts

APFA's own description of the prior CBA, Policy Manual Section 11, the GAP, and the February 28 decision.

the CBA in effect in 2022, 2023, and through September 11, 2024 while the parties negotiated the current CBA. Section 30 covers the grievance and discipline procedures in 2022-2024 (through ratification of the new CBA).

6. Part of my duties as National Vice President is to oversee the union's System Board of Adjustment ("SBA") Department. We have one staff person in the department who works out of APFA headquarters (see below). For purposes of the SBA process and member representation in that process, Regional Representatives often work out of APFA offices in Euless, Texas.

7. Under CBA Section 30.A.3, a Flight Attendant may file a Notice of Dispute ("NOD") to begin the grievance process. Mr. Ocampo had a right to file a NOD on his own if he chose to do so.

8. Section 11 of the Policy Manual addresses the process for reviewing grievances and decisions about sponsoring grievances to arbitration before the SBA.

9. Section 11 also discusses the Grievance Review Committee ("GRC"), defines its membership, and outlines its role. The GRC is composed of the National Vice President and the Regional Representatives. *See* Exhibit B/Sec. 11.H.1. The GRC meets twice each month. I, as the National Vice President, chair the meeting and an in-house lawyer based at APFA headquarters usually attends. In GRC meetings, each Regional Representative weighs in based on an individual review of available information about a grievance and votes based on the representative's

expertise in grievance handling and representation. In 2023, Alyssa Urban was the APFA lawyer supporting and advising the GRC. She worked at APFA's headquarters and resides in north Texas.

10. Plaintiff's Complaint (¶ 138) refers to notice that he received on or about October 30, 2023 of APFA's decision not to "continue advocacy or escalate his case ...." This appears to be a reference to notification from the GRC. The GRC met to decide on how to proceed with Mr. Ocampo's grievance (SS-219-2023-MIA-46) on October 27, 2023. As in earlier meetings, and as we did with the other grievances considered that day, the GRC carefully reviewed Mr. Ocampo's grievance and the company's materials underlying the termination. We did so in good faith and with thoughtful deliberation. The GRC ultimately decided not to sponsor his case to arbitration. I do not recall dissenting votes. The union notified Mr. Ocampo of the GRC's decision by Certified Mail and email on November 1, 2023. A true and correct copy of the November 1, 2023 (with electronic delivery information and return receipt) is attached at **Exhibit D.**

11. There were seven Regional Representatives on the GRC in 2022-2024. A Regional Representative's duties are outlined in Constitution Article IX, Section 1 and include assisting Base Presidents relating to grievance procedure and local policy, representing grievants at first-level hearings, assisting with cases before the SBA, and assisting with the training of base representatives. APFA's records show that in 2022-2024 the GRC's members

were:

a. National Vice President Larry Salas;
b. RR1 Robyn Walters (LAX, PHX, SFO)[Gilbert, AZ];
c. RR2 Grace Allen (DFW)[Newark, DE];
d. RR3 Dan Sampey (ORD)[Wilmington, DE];
e. RR4 Nick Bader (MIA)[Saint Cloud, FL];
f. RR5 Raymond Lewis (LGA, BOS)[E. Stroudsburg, PA];
g. RR6 Kim Kaswinkel (CLT)[New Philadelphia, OH]; and
h. RR7 Mark Gentile (PHL, DCA)[N. Versailles, PA].

Each Regional Representative's constituent bases are shown in blue parentheses and their city of residence at the time is shown in red brackets.

12. Plaintiff's Complaint (¶ 21 and elsewhere) refers to "Heidi Morgan." Heidi Morgan (f/k/a Heidi Kidwell) is an American Airlines Flight Attendant. She was the Miami Base Vice President between April 1, 2021 through March 31, 2025. APFA's records indicate that Ms. Morgan resides in North Carolina. Ms. Morgan did not attend or participate in the October 27, 2023 GRC meeting to review Mr. Ocampo's grievance. Ms. Morgan was not involved in decisions about the grievance or the decision not to sponsor it to the SBA.

13. Plaintiff's Complaint (¶ 22 and elsewhere) refers to "Randy Truman (sic)." Randy Trautman is an American Airlines Flight Attendant. He was the Miami Base President between May 2, 2015 through March 31, 2025. APFA's records indicate that Mr. Trautman resides in Florida. Mr. Trautman did not attend or participate in the October 27, 2023 GRC meeting to review Mr. Ocampo's grievance. Mr. Trautman was not involved in

decisions about the grievance or the decision not to sponsor it to the SBA.

14. Policy Manual Section 11.I discusses the Grievance Appeal Panel ("GAP"). The GAP is composed of the Ad Hoc members of the Executive Committee. *See* Exhibit B/Sec. 11.I.2. APFA's Constitution Article III, Section 4 defines the Executive Committee as consisting of the National President, National Vice President, National Treasurer, National Secretary, and five Ad Hoc Members. Exhibit A/Art. III, § 4.B. National Officers do not participate in GAP meetings or decisions. The GAP meets quarterly at APFA headquarters in conjunction with the Executive Committee's quarterly meetings.

15. The GAP reviewed Mr. Ocampo's appeal along with the grievance file on February 22, 2024 after the Q4 Executive Committee meeting. Present were ad hoc Executive Committee Members Robert Norvell, Marcus Gluth, Kerstin Conners, Joseph Seelye, and Brian Morgan. Ms. Morgan and Mr. Trautman did not attend or participate in the February 22, 2024 GAP meeting. Neither Ms. Morgan nor Mr. Trautman was involved in decisions about that appeal or whether to sponsor his grievance to the SBA.

16. The union notified Mr. Ocampo of the GAP's decision to uphold the GRC by Certified Mail and email on February 28, 2024. The February 28, 2024 letter from National Vice President Larry Salas is attached at **Exhibit E** and advises Mr. Ocampo that he may pursue his own case in accordance with APFA Policy Manual Section 11.C.4. Using the USPS tracking number,

it appears that the U.S. Postal Service delivered letter on March 4, 2024 around 3:39 p.m. **Exhibit F** is a printout from the USPS website for tracking number for my letter to Mr. Ocampo.

17. APFA's General Counsel received a copy of Mr. Ocampo's lawsuit through service by a U.S. Marshal on or about February 11, 2026. The complaint appears to have been filed January 12, 2026.

18. Kim Ramos is the Executive Assistant to the National Vice President and SBA Administrator. She has held that position for more than 20 years. In 2022-2024, she lived and worked in Texas. She mostly works in person at APFA headquarters in Euless, Texas. Among her duties were to prepare and send notification letters to members regarding GRC and GAP decisions.

19. I spend most of my working time as National Vice President in north Texas. I believe that the Fort Worth Division of the Northern District of Texas is more convenient than a federal court in south Florida. Our in-house counsel and lead outside counsel representing the union in this matter both live in north Texas. Witnesses who are or were union representatives would prefer to appear and testify at a court near APFA's officers, where we have staff and logistical support. Defending against Mr. Ocampo's claims in the Southern District of Florida will be significantly more costly, inconvenient, and difficult for APFA.

* * *