**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| CARLOS ALBERTO OCAMPO, | § | |
| *Plaintiff*, | § | |
| v. | § | Civ. A. No. 0:26-cv-60074-DSL |
| ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, | § | |
| *Defendant*. | § | |

# MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

The Second Amended Complaint ("SAC") is untimely and fails to state a plausible claim. The Association of Professional Flight Attendants ("APFA") moves under Rule 12(b)(6) for dismissal with prejudice.

## I. INTRODUCTION

The Railway Labor Act, 45 U.S.C. § 151 *et seq*. ("RLA"), creates a duty for unions to treat members in good faith and without discrimination. APFA proudly bears this duty as the exclusive collective-bargaining representative for American Airlines' 28,000-plus flight attendants. That is why the union goes above and beyond the RLA's mandates by affording members a structured, multi-tiered review of grievance and arbitration decisions. APFA followed that process for Carlos Ocampo, and he has not alleged otherwise.

Two-plus years after American Airlines terminated him, Ocampo filed suit against APFA. He complains that APFA breached its duty of fair

representation by "fail[ing] to provide the administrative instructions necessary" to allow him to prosecute his grievance at the System Board of Adjustment ("SBA"). [ECF 41 ("SAC") ¶ 4.] Yet Ocampo concedes that APFA notified him by March 4, 2024 (the "Final Decision Letter") of the requirement for certified-mail notice within 30 days of his election to take his own case to SBA. [SAC ¶ 5] He then acknowledges that he failed to give timely notice. [SAC ¶ 5] This failure resulted in his grievance's withdrawal. Consequently, there was nothing for APFA to administer, since his grievance was withdrawn by the time he claims to have followed up with the local union rep in Miami. He said nothing during the 30-day window. Instead, he waited to contact APFA again for 185 days after notification—by which time the 6-month RLA limitations period had expired. [SAC ¶¶ 46-47]

Ocampo, like other union members, has no "absolute right to have his grievance taken to arbitration …." *Vaca v. Sipes*, 386 U.S. 171, 191 (1967). APFA deserved "wide latitude" in representing him. *Air Line Pilots Ass'n, Int'l ("ALPA") v. O'Neill*, 499 U.S. 65, 78 (1991). So, Ocampo could not reasonably expect further union involvement after unequivocal notice in early 2024 that APFA declined to arbitrate his grievance. The SAC is therefore both untimely and insufficient to plead a plausible claim for DFR breach. Ocampo's dissatisfaction with the end to his employment with American Airlines is no basis for APFA's liability. The Court should dismiss the SAC with prejudice.

## II. PLAINTIFF'S ALLEGATIONS AND THE COURT'S PRIOR RULINGS

### A. Plaintiff Contests His Termination from American Airlines

American terminated Flight Attendant Carlos Ocampo on July 24, 2023. [SAC ¶ 17] APFA grieved Ocampo's termination at his request. [SAC ¶¶ 18, 21] APFA Regional Representative Nicholas ("Nick") Bader handled the grievance and continued to communicate with him through February 2024. [SAC ¶¶ 26, 32] Ocampo alleges that on February 14, 2024—while his appeal was pending—Bader discussed arbitration costs and told him "not to worry" and to call back "after Plaintiff gathered the funds so the matter could move forward."[1] [SAC ¶¶26-28]

### B. Ocampo Receives the Final Decision Letter in Early March and Says Nothing Further for Over Six Months

Two weeks later APFA National Vice President Larry Salas notified Ocampo that the union's Grievance Appeal Panel ("GAP") had upheld the Grievance Review Committee's ("GRC") withdrawal decision. [SAC ¶¶ 25, 34; ECF 41-1 at 14] Salas sent the Final Decision Letter by email and certified mail. [SAC ¶ 34; ECF 41-1 at 14-17] Citing APFA's Policy Manual, Salas advised (in bold) that Ocampo needed to notify the union in writing within 30 days if he intended to "pursue [his] own case …." [*Id.*] The enclosed procedural notice explained that Ocampo would be "fully responsible" for certain arbitration costs (with the remainder shared with the Company). [*Id.*] APFA

[1] The FAC set this call on February 15, 2024. [ECF 22 ¶¶10-12] This motion uses the date in the SAC. [ECF 41 ¶ 26]

asked for $5,000 from Ocampo at least 120 days before the hearing as "approximately one-half (1/2) of the arbitrator and hearing room costs based on two (2) days of hearing and one (1) day of decision preparation time …." [*Id.*]

The SAC acknowledges that Ocampo received the Final Decision Letter on March 4, 2024. [SAC ¶ 47; ECF 41-1 at 19] The 30-day window to notify APFA ended on April 3, 2024. [SAC ¶ 47] The Final Decision Letter warned of the consequences of failing to timely notify APFA. [ECF 41-1 at 14 ("your case will be withdrawn.")] Yet Ocampo did nothing. He did not respond to Salas or anyone at APFA headquarters in 2024. Instead, according to Ocampo, he waited to follow up with Bader until September 5, 2024.[2] That was 185 days after the Final Decision Letter. [SAC ¶ 46; Ex. B]

Six more months passed. Ocampo says that he next emailed Bader on March 25, 2025, and again on May 16, 2025. [SAC ¶¶ 48-49, 59, 64; Ex. C, D] Two more months passed without Ocampo contacting anyone at APFA headquarters or any other APFA representative. On July 17, 2025, Ocampo sent APFA a pre-litigation demand for $500,000. [ECF 41-1 at 40] APFA's General Counsel responded on August 20, 2025, that the union's "records do not reflect further correspondence from you following" the Final Decision Letter and that Ocampo's claim was untimely. [*Id.* at 41]

[2] Ocampo directed this email to nbadder@apfa.org, not to Bader's APFA email. Bader did not receive the message until Ocampo forwarded it to Bader's APFA address on April 16, 2026—three months *after* filing this lawsuit. [ECF 41-1 at 6; ECF 25-1, Bader Dec. ¶ 5]

### C. The Court Dismissed the First Amended Complaint Because the Claim was Untimely and Failed to Allege a DFR Breach

On June 24, 2026, the Court dismissed the First Amended Complaint on two grounds. [ECF 34] First, the DFR claim was untimely. The Court concluded that the Final Decision Letter was APFA's final action because it "unambiguously stated that APFA would not be assisting Plaintiff in the grievance process and instructed Plaintiff how to navigate the process on his own behalf." [ECF 34 at 6] Accordingly, the limitations period began to run no later than March 4, 2024. [*Id.*] The Court also held that Ocampo failed to state a claim. [*Id.* at 12] Viewing the allegations in Ocampo's favor, the Court held that, "[a]t best," Bader made a "mistake of judgment" and that any failing "r[ose] at most to the level of negligence." [ECF 34 at 11-12] A claim merely for alleged negligent representation "is inactionable." [*Id.*]

Ocampo sought reconsideration. [ECF 35] The Court denied the motion, concluding that his arguments had been "fully considered…," but gave him another opportunity to amend. [ECF 40 at 3-4] The SAC followed. [ECF 41]

### D. Plaintiff's Remaining Claim

Although he chose not to invoke the member-funded arbitration procedure, Ocampo faults APFA for failing to "administer" it. [SAC ¶¶ 4, 7][3]

---

[3] Ocampo chose not to sue American for breach of the CBA. APFA reserves arguments that this DFR count is a hybrid claim requiring Ocampo to establish the underlying contract breach to sustain a DFR claim. *See Coppage v. U.S. Postal Serv.*, 281 F.3d 1200, 1204 (11th Cir. 2002)(noting that the employer's CBA breach and union's DFR breach are "inextricably interdependent.").

He filed this lawsuit in January 2026 and served APFA in February. The SAC distills the operative facts to a single call between Bader and Plaintiff on February 14, 2024, four emails between February 15, 2024 and May 16, 2025, and a letter from APFA's General Counsel in August 2025. [SAC ¶¶ 26, 30, 46, 48-49, 84-92] According to Ocampo, Bader said APFA was "occupied with contract negotiations," that Ocampo should not worry, and that he should "contact Bader after [Ocampo] gathered the funds so the matter could move forward." [SAC ¶28] The follow-up emails are dated February 15, 2024 (¶ 30, Ex. A), September 5, 2024 (¶ 46, Ex. B), March 2025 (¶ 48, Ex. C), and May 16, 2025 (¶ 49, Ex. D). Ocampo claims that Bader failed to respond to any of them. [SAC ¶¶ 47, 50-61, 66] But he sent them to *nbadder@apfa.org*—not to Bader's APFA email.[4] [ECF 34 at 7]

Ocampo does not claim that he called Bader or anyone at APFA after February 15, 2024. Nor does he allege that he contacted any other APFA representative until his pre-litigation demand in July 2025.

## III. ARGUMENTS AND AUTHORITIES

### A. Standards Governing this Rule 12(b)(6) Motion

The Second Amended Complaint abandons Ocampo's original and amended allegations. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir.

[4] Bader and APFA deny that Bader received these emails and question the authenticity of the purported Bader email at ECF 41-1, Exhibit C. APFA reserves those objections and arguments since the Court already noted that Ocampo sent these emails to the wrong address. [ECF 34 at 7]

2016). An amended pleading "supersedes the former pleading" and the earlier pleading "bec[omes] a legal nullity." *Id.* The Court accordingly evaluates Ocampo's claims based on the allegations in the SAC.

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That requires more than "threadbare recitals of a cause of action supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts evaluate the factual pleadings as well as attached exhibits, taking all well-pleaded facts as true. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007); *see also* FED. R. CIV. P. 10(c) (stating that exhibits are "part of the pleading for all purposes.").

But courts are "not bound to accept … a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. And they "may infer from the factual allegations … 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). Indeed, attached documents govern if they contradict the complaint's general and conclusory allegations. *Griffin Indus.*, 496 F.3d at 1206.

### B. The SAC Re-Pleads Theories that the Court Has Already Rejected

Ocampo repackages earlier theories but still does not allege a plausible claim. He no longer contests APFA's decision not to sponsor his grievance or

the policy requiring a member pursuing his own case to share the cost. [SAC ¶¶ 2, 93-94] He now says the "actionable conduct" is APFA's "subsequent handling" of his effort to invoke the member-funded arbitration route, including alleged failure to respond to emails, provide escrow instructions, and identify a new contact person after he claims to have raised the funds. [SAC ¶¶ 7, 95-100] But those are the same purported emails and allegations that the Court already examined.

In dismissing the First Amended Complaint, the Court concluded that the DFR claim was both untimely and failed to state a plausible claim. The Court held that APFA's alleged failure to keep Ocampo informed of the status of his grievance was not a DFR violation. [ECF 34 at 11-12] It also concluded that "alleged negligence is inactionable" and that the FAC alleged, "[a]t most," that Bader "negligently led Plaintiff to believe that he could pursue arbitration at any time in the future once he raised the necessary funds." [*Id.* at 12]

Meanwhile, the SAC's concessions confirm the Court's rulings. Ocampo now concedes that he received the Final Decision Letter on March 4, 2024, that certified-mail notice within 30 days was required, and that he gave no such notice. [SAC ¶¶ 5, 41, 47] He further concedes that the Final Decision Letter was final as to APFA's decision not to pursue arbitration. [SAC ¶ 103] And he allows that the Court "may ultimately determine that [his] reliance [on Bader's purported instructions] was not reasonable as a matter of law." [SAC ¶ 53] On Ocampo's own account, he did not follow up with Bader for over six months

after—that is, until after the RLA limitations period. [SAC ¶¶ 46, 56 (September 5, 2024 email)] He then waited another 16 months to file this lawsuit.

### C. Plaintiff's Claim Is Barred by the Statute of Limitations and Should Be Dismissed with Prejudice

APFA is entitled to dismissal because Ocampo filed this lawsuit well past the statute of limitations.

#### 1. *A Six-Month Limitations Period Applies to DFR Claims*

DFR claims under the RLA—like under the National Labor Relations Act—have a six-month statute of limitations. *Smallakoff v. Air Line Pilots Ass'n, Int'l*, 825 F.2d 1544, 1546 (11th Cir. 1987); *cf. DelCostello v. Teamsters*, 462 U.S. 151 (1983) (borrowing NLRA limitations for "hybrid" DFR claims under LMRA § 301). The limitations clock begins when the plaintiff knows or reasonably should know of the union's alleged breach. *See Coppage v. U.S. Postal Serv.*, 281 F.3d 1200, 1204 (11th Cir. 2002)(cleaned up). Here, the timing depends on when the union took its final action, meaning the point where the grievance process exhausted or otherwise broke down. *Id.* (quoting *Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir. 1986)).

#### 2. *Plaintiff Filed His Complaint in January 2026—Sixteen Months After the Limitations Period Expired*

Ocampo now complains that APFA failed to "administer" the member-funded arbitration between February 2024 and August 2025. [SAC ¶¶95-100, 104-09] American Airlines terminated him in July 2023. [SAC ¶ 17] The GRC

declined to sponsor the arbitration in late October 2023—which the union communicated to Ocampo in writing. [SAC ¶ 23; *see also* ECF 21-1, Salas dec. ¶10; Ex. D] After an independent review, the GAP upheld the GRC's decision. [SAC ¶ 25; ECF 41-1 at 14] On February 28, 2024, APFA notified Ocampo by certified mail and email of the GAP decision and advised that he could pursue the arbitration on his own. [SAC ¶¶ 34-35; ECF 41-1 at 14-17] The February 2024 notification was the union's "final action" and the latest trigger for the limitations period. *See Coppage*, 281 F.3d at 1204.

Ocampo acknowledges receiving the February 28, 2024, notice. He argues, however, that a call with Nicholas Bader 14 days earlier, followed by APFA's silence, "created a factual and equitable basis to prevent APFA from relying on the certified-mail requirement…." [SAC ¶¶ 42-43] But the Final Decision Letter from a National Officer was unequivocal that APFA had decided to withdraw the grievance and that Ocampo could pursue his own case. [ECF 41-1 at 14, Ex. E] In bold, underlined text, the notice required certified-mail notice within 30 days:



Dear Carlos:

This is to advise you that the Grievance Appeal Panel, which includes the five Ad Hoc Members of the Executive Committee has met and determined to uphold the Grievance Review Committee's decision to withdraw your grievance.

**Please advise my office, in writing by certified mail, within thirty (30) days of receipt of this letter if you wish to pursue your own case in accordance with the APFA Policy Manual, Section 11.C.4. which is enclosed.**

Also, enclosed are the procedures to follow in the event you wish to pursue your own case to arbitration.

If we do not hear from you within the time period specified above, your case will be withdrawn.

Very truly yours,

Larry Salas
National Vice-President

[ECF 41-1 at 14]

The notice also warned that failure to give timely notice would result in withdrawal of his case. Consequently, Ocampo knew the union's "final action" no later than March 4, 2024, when he acknowledges receiving that notice. [SAC ¶ 47; ECF 34 at 6]

Ocampo's cause of action was complete by early March 2024. Under the applicable limitations period, Ocampo needed to bring this DFR claim by September 4, 2024. Instead, he passed on arbitration at the SBA before waiting until January 2026 to file this lawsuit. Over a year too late, Ocampo's DFR claim is time-barred and should be dismissed.

### 3. *Plaintiff Chose Not to Pursue His Claims, and His Waiver and Estoppel Theories Fail*

Confronted with an untimely claim, Ocampo invokes waiver and equitable estoppel. [SAC ¶¶ 6, 42-53, 113, 132] His own timeline undoes these theories.

Ocampo chose not to give notice to APFA within the 30-day window. As the Final Decision Letter warned, his claim was withdrawn—and therefore his ability to pursue the member-funded route ended—by early April 2024. At that point there was nothing for APFA to "administer."

Ocampo reiterates the estoppel theory from the FAC and adds a waiver claim. The Court has already rejected estoppel. [ECF 34 at 8-9] The waiver claim also fails. Waiver requires either express conduct or circumstances that "make out a clear case" of intentional surrendering of rights. *See Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 935 (11th Cir. 2021)(internal

citation omitted. Ocampo identifies no act by which APFA intentionally or impliedly relinquished the 30-day notice requirement or any other procedural obligation. [SAC ¶¶ 45, 47, 63]

Tellingly, Ocampo does not allege that he attempted to reach the union by phone or through any other APFA representative. Reliance is reasonable only if the plaintiff "did not know nor should have known that his adversary's conduct was misleading." [ECF 34 at 8 (quoting *Basel v. Sec'y of Def.*, 507 F. App'x 873, 877 (11th Cir. 2013)] Ocampo ignored the Final Decision Letter, passed on the SBA, and waited nearly two years before filing suit.

The estoppel claim is no better. Equitable estoppel requires false representations or concealment by the defendant on which the plaintiff relied in good faith (among other elements). *Lopez v. Geico Cas. Co.*, 968 F. Supp. 2d 1202, 1207 (S.D. Fla. 2013). It was unreasonable to rely on whatever Bader supposedly said on February 14 when clear written notice just two weeks later contradicted it. [ECF 41-1 at 14] And Ocampo does not allege any APFA representation or misrepresentation after February 14, 2024. He says the opposite: that APFA stopped communicating. Nor does he claim that APFA intended to deceive him into delaying or withdrawing his arbitration. *See Lopez*, 968 F. Supp. 2d at 1207 (the plaintiff must show, among others, that the defendant's "intention, or at least the expectation that the conduct will be acted upon by, or influence, the other party…."). He cannot establish these essential elements for equitable estoppel.

Neither waiver nor estoppel excuses his delay. Ocampo's claims are simply untimely.

### 4. Ocampo's DFR Claim was Already Untimely by the Time of His Pre-Suit Demand

Ocampo now pleads that APFA's "final action" occurred in August 2025 when its General Counsel responded to his pre-suit demand for a $500,000 payment. [SAC ¶¶109-11] This exchange occurred nearly a year after the limitations period ran, and Ocampo cannot rely on it to restart the clock. A plaintiff "cannot toll the statute of limitations simply by writing letters to the Union protesting the binding final settlement of [his] grievance." *See Coppage*, 281 F.3d at 1206. This Court already noted that *Coppage* "applies with even greater force" where, as here, the employee failed to direct his communications to the proper representatives. [ECF 34 at 8] APFA's response in August 2025 does not restart the clock, although it reiterated the 30-day notice requirement and RLA limitations period. [ECF 41-1 at 41]

## D. Plaintiff Fails to State a Claim for Breach of APFA's Duty of Fair Representation and His Complaint Should Be Dismissed

Ocampo's complaint is not only barred by the statute of limitations but also fails to allege conduct that is "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. Ocampo fails to plausibly allege a DFR breach by APFA. His core allegation—that APFA failed to administer a grievance that was already withdrawn—is insufficient. Ocampo had no right to insist on arbitration, and APFA's actions deserve "wide latitude." *Vaca*, 386 U.S. at 191;

*ALPA*, 499 U.S. at 78. APFA completed its internal grievance review, affording him due process, and sent clear, written notice of the final decision. Those actions *exceed* the RLA's requirements. Ocampo fails to state a claim for DFR breach.

**1. *Courts Owe Unions Wide Deference in Grievance and Arbitration***

The duty of fair representation derives from a union's statutory status as the exclusive collective bargaining representative for its members. *ALPA*, 499 U.S. at 75–76. Because a union needs wide latitude to perform that role effectively, judicial review of union representational decisions must be "highly deferential." *Id.* at 78.

A union breaches that duty only when its conduct is "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. Conduct is arbitrary only when, "in light of the factual and legal landscape at the time," it falls "so far outside a wide range of reasonableness as to be irrational." *ALPA*, 499 U.S. at 67 (cleaned up). Bad faith requires "substantial evidence of fraud, deceitful action, or dishonest conduct." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 300 (1971)(internal quotation omitted); *accord Demetris v. Transp. Workers Union of Am., AFL-CIO*, 862 F.3d 799, 808 (9th Cir. 2017). Neither negligence nor a misjudgment suffices for bad faith or arbitrary conduct. *Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206 (11th Cir. 1982). Only a union's "reckless disregard for the employee's rights or grossly deficient" performance will establish a breach. *Id.* at 1207.

A union has "considerable discretion" in grievance handling and "may consider the interests of all its members when deciding whether or not to press the claims of an individual employee." *Seymour v. Olin Corp.*, 666 F.2d 202, 208 (5th Cir. Unit B 1982), *disapproved on other grounds by Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 220 (1983).

To state a plausible claim for DFR breach, Ocampo must plead non-conclusory facts showing that APFA "abandoned or ignored [his] grievance for no reason or processed it in a perfunctory fashion." *Daniels v. United Auto Workers*, 602 F. App'x 740, 742 (11th Cir. 2015)(cleaned up). The bar is set high—and Ocampo does not come close to clearing it.

### 2. *Plaintiff Abandons His Earlier DFR Claims and Concedes There Was No Discrimination*

The SAC once again narrows Ocampo's claims. He no longer challenges the decision against arbitration or the arbitration cost-sharing requirement. [SAC ¶¶ 2, 93-94, 126] He no longer alleges individual misconduct by APFA representatives in the pre-termination and grievance processes. And he abandons any claim of discrimination or bad faith. [*Compare* FAC ¶ 26 *with* SAC ¶ 8] An amended pleading "supersedes the former pleading" *Hoefling*, 811 F.3d at 1277. The earlier allegations are "no longer part of the pleader's averments against his adversary." *Id.*

What remains is a label. Ocampo alleges bad faith only "to the extent established by the evidence" but pleads nothing suggesting fraud, deceit, or dishonesty. [SAC ¶ 8] Such "naked assertion[s] devoid of further factual

enhancement" are not to be credited at the pleadings stage. *Iqbal*, 556 U.S. at 678 (cleaned up). Consequently, for his claim to survive, he must plead sufficient factual allegations showing the union's bad faith or arbitrary conduct. *Vaca*, 386 U.S. at 190.

### 3. *Plaintiff Fails to State a Claim Because APFA Had No Obligation to Pursue or Administer the Grievance Further*

Ocampo relies on theories of bad faith and arbitrary treatment after APFA declined to sponsor his grievance to the SBA. To survive dismissal, he must plead non-conclusory facts showing that APFA's conduct was irrational—that is, "outside the wide range of reasonableness," under *ALPA*—or that it reflects fraud, deceit, or dishonesty, under *Lockridge*. He does neither.

Ocampo now faults APFA for not answering his mis-directed emails and for failing to give escrow instructions. [SAC ¶¶ 95-100, 128] But this claim suffers the same faults discussed above. APFA was not obligated to take the Ocampo grievance to arbitration. APFA communicated that decision to Ocampo in writing—by email and mail—on February 28, 2024. In doing so, APFA explained the process should he choose to pursue his own case to arbitration. Even if one assumes Bader failed to respond to Ocampo's requests, this is not enough to hold APFA liable under the RLA. Union representation in grievances need not be perfect. *See Harris*, 668 F.2d at 1207; *see also Connally v. Transcon Lines*, 583 F.2d 199, 203 (5th Cir. 1978)(explaining that, however imperfect, the representation was "not so poor as to deprive the plaintiffs of a fair hearing ...."). A union's "failure to apprise [employees] of

procedural rules governing grievance proceedings" is not—without more—a breach. *See Connally*, 583 F.2d at 203.

Of course, APFA did not fail or refuse to communicate with Ocampo. The SAC's exhibits contradict these allegations. Ocampo has not alleged that he communicated with anyone at APFA headquarters, or with anyone involved in administering SBAs, between February 28, 2024 and his July 2025 demand; or that he raised concerns with any other union representative. When he finally wrote to APFA headquarters, APFA responded within a few weeks. [ECF 41-1 at 40-41]

Ocampo no longer challenges the $5,000 cost-sharing requirement. [SAC ¶¶ 2, 94] In any event, the pay-to-proceed theory does not show bad faith but rather a reasonable financial arrangement for employee-prosecuted grievances. If APFA had no obligation to take the grievance to arbitration, there could be no obligation to foot the bill either. APFA's policy is to estimate the employee-share of expected arbitration costs and then to hold the employee's funds in escrow to cover those amounts. [ECF 41-1 at 15; ECF 21-1, Salas dec. Ex. B, §11.C.4.f, at 11.4] This is not evidence of bad faith much less the "substantial evidence of fraud, deceitful action, or dishonest conduct" required for DFR claims. *See Lockridge*, 403 U.S. at 300. The Court should not infer bad faith from APFA's request for the $5,000 deposit when this more plausible alternative explanation is apparent. *Am. Dental Ass'n*, 605 F.3d at 1290.

Ocampo may be disappointed with the end of his American Airlines employment. But that disappointment is no basis to hold APFA liable for breaching any duty to Ocampo. The SAC fails to allege "arbitrary, discriminatory, or […] bad faith" conduct by APFA and must be dismissed.

## IV. CONCLUSION

The Second Amended Complaint is both untimely and fails to state a viable claim for relief. The Court should dismiss with prejudice.

Date: October 20, 2026

Respectfully submitted,

*/s/ Capri Trigo*
**CAPRI TRIGO, ESQ.**
Florida Bar No. 28564
**SHEA C. KLEINMAN, ESQ.**
Florida Bar No. 1049666
**GORDON REES SCULLY MANSUKHANI**
100 S.E. Second Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428-5323
Emails: ctrigo@grsm.com, skleinman@grsm.com,

*/s/ James D. Sanford*
James D. Sanford*
**GILLESPIE SANFORD LLP**
4803 Gaston Ave.
Dallas, Texas 75246
Telephone: (214) 800-5111
Email: jim@gillespiesanford.com
**Admitted Pro Hac Vice*

*/s/ Charlette Broderick*
Charlette Broderick*
**Association of Professional Flight Attendants**
1004 West Euless Blvd.
Euless, Texas 76040
**Admitted Pro Hac Vice*

COUNSEL FOR DEFENDANT APFA

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on October 20, 2026 a true and correct copy of the foregoing was served upon all parties on the service list.

***/s/ Capri Trigo***
Capri Trigo